**EXHIBIT A**

Case 2:11-mc-00038-KJM -EFB Document 4-3 Filed 05/11/11 Page 2 of 70
Case 2:11-cv-01966-CAS -AGR Document 64 Filed 04/29/11 Page 1 of 24 Page ID
#:1494

1   JEFFREY A. COHEN, [State Bar 149615]
    jcohen@corichlaw.com
2   ERIK S. VELIE, [State Bar 252446]
    evelie@corichlaw.com
3   COHEN & RICHARDSON, PC
    2321 Rosecrans Avenue, Suite 4210
4   El Segundo, CA 90245-4911
    Telephone: (310) 469-9600
5   Fax: (310) 469-9610

6   Attorneys for Plaintiff, Global Development Strategies, Inc. and Global
7   Distribution Services, Inc.

8            UNITED STATES DISTRICT COURT

9           CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  Global Development Strategies, Inc., a Nevada Corporation; Global Distribution Services, Inc., a Nevada Corporation, | Case No. CV11-01966 CAS |
| 12 | **COMPLAINT FOR:** |
| 13       Plaintiffs, | **(1) VIOLATION OF ANTI-CYBERSQUATTING CONSUMER PROTECTION UNDER 15 U.S.C. § 1125(d);** |
| 14      vs. | **(2) BREACH OF ORAL CONTRACT;** |
| 15  Mobile Motion, Inc., a California Corporation; Doron Kim, an individual, E DATING For Free, Inc., a California Corporation; and DOES 1-10. | **(3) BREACH OF IMPLIED-IN-FACT CONTRACT;** |
| 16 | **(4) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;** |
| 17       Defendants. | **(5) CONVERSION; AND** |
| 18 | **(6) FRAUD – INTENTIONAL MISREPRESENTAION.** |
| 19 | |
| 20 | **DEMAND FOR JURY TRIAL** |
| 21 | Judge: Christina A. Snyder |
| 22 | Courtroom: 5 – 2nd Floor |
| 23 | |
| 24 | |
| 25 | |
| 26 | |

27      COMES NOW Plaintiffs, Global Development Strategies, Inc., a Nevada

28  Corporation ("GLOBAL STRATEGIES") and Global Distribution Services, Inc., a

Case 2:11-mc-00038-KJM -EFB Document 4-3 Filed 05/11/11 Page 3 of 70
Case 2:11-cv-01966-CAS -AGR Document 64 Filed 04/29/11 Page 2 of 24 Page ID
#:1495

1   Nevada Corporation ("GLOBAL SERVICES") (collectively referred to as

2   "GLOBAL", "Plaintiffs") allege causes of action against Defendant, Mobile

3   Motion, Inc., a California corporation, ("Mobile Motion") Defendant, Doron Kim,

4   an individual ("KIM" and collectively with Mobile Motion, "Mobile"), and

5   Defendant, E Dating For Free, Inc. ("E DATING"), as follows:

6   ## NATURE OF THE CASE

7       1.    This is an action to enjoin Mobile, who are internet marketing

8   consultants of Plaintiffs, and E DATING, from unlawfully and improperly

9   registering, re-registering, using, transferring to third parties and/or assigning

10   certain Domain Names (identified below) to third parties in violation of 15 U.S.C.

11   1125(d) and refusing to transfer the Domain names to Plaintiffs upon Plaintiffs'

12   request. Mobile and E DATING have intentionally and unlawfully registered and

13   used the Domain Names, which Plaintiffs paid for, by refusing to transfer the

14   registrations to Plaintiffs all with the bad faith intent to profit from the famous

15   registrable trademark marks for which Plaintiffs are legally entitled to and have the

16   right to registration.

17       2.    Mobile has log-in access to certain Internet advertising accounts

18   known as "Pay-Per-Click" accounts that belong to Plaintiffs. Plaintiffs are

19   presently unable to access these accounts to view them or to make changes to them

20   despite the fact that these accounts continue to charge Plaintiffs' credit cards

21   $4,000 to $5,000 or more on a **daily** basis. Mobile refuses to turn these accounts

22   over to Plaintiffs. Plaintiffs seek to enjoin Mobile from disposing of, deleting,

23   transferring to third parties or making other changes to the "Pay-Per-Click"

24   accounts (1) Google AdWords (defined below) and (2) Microsoft AdCenter

25   (hereinafter "Accounts") presently held by Mobile purportedly for the benefit of

26   Plaintiff, which are necessary to Plaintiffs' marketing and brand. Mobile is in

27   breach of an oral agreement between Plaintiffs and Mobile with respect to the

28   registration of the Domain Names as set forth above and the ownership of the

COHEN AND
RICHARDSON, PC
El Segundo, California

2

Case 2:11-mc-00038-KJM -EFB Document 4-3 Filed 05/11/11 Page 4 of 70
Case 2:11-cv-01966-CAS -AGR Document 64 Filed 04/29/11 Page 3 of 24 Page ID
#:1496

1   Google AdWords and Microsoft AdCenter marketing accounts, for which

2   Plaintiffs have at all times and continue to pay and be solely financially responsible

3   for.

4        3.     Accordingly, under the various causes of action plead herein;

5   Plaintiffs seek a temporary restraining order and preliminary injunction

6   maintaining the status quo and eventually permanent relief in the form of the

7   transfer of the registration of the Domain Names and access to the Pay-Per-Click

8   Accounts as well as monetary and other damages arising from Mobiles' willful and

9   unlawful cybersquatting practices, and breaches of the oral agreement between the

10   parties as set forth below.

## SUBJECT MATTER JURISDICTION

12        4.     This action arises under the Anti-Cybersquatting Protection Act (the

13   "ACPA"), which is codified in the Lanham Trademark Act 15 U.S.C. §§ 1051, *et*

14   *seq.*, at 15 U.S.C. § 1125(d). Accordingly, this Court has federal jurisdiction over

15   the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§

16   1331.

17        5.     In addition, this Court has supplemental jurisdiction over the common

18   law claims alleged herein pursuant to 28 U.S.C. § 1367 as those claims arise from

19   the same case and controversy as the the "ACPA" claim.

## THE PARTIES, PERSONAL JURISDICTION AND VENUE

21        6.     At all times mentioned herein, GLOBAL STRATEGIES is and was a

22   corporation duly organized and existing under the laws of the state of Nevada.

23   GLOBAL STRATEGIES's principal place of business is located at 9985

24   Businesspark Avenue, Suite B, San Diego, CA 92131.

25        7.     At all times mentioned herein, GLOBAL SERVICES is and was a

26   corporation duly organized and existing under the laws of the state of Nevada.

27   GLOBAL SERVICES's principal place of business is located at 9985

28   Businesspark Avenue, Suite B, San Diego, CA 92131.

COHEN AND
RICHARDSON, PC
EL SERENO, CALIFORNIA

3

FIRST AMENDED COMPLAINT

Case 2:11-mc-00038-KJM-EFB  Document 4-3  Filed 05/11/11  Page 5 of 70
Case 2:11-cv-01966-CAS-AGR  Document 64  Filed 04/29/11  Page 4 of 24  Page ID
#:1497

1   8.  Upon information and belief, Mobile Motion is a corporation

2 organized under the laws of the state of California and with a regular and

3 established place of business located at 111 Pier Avenue, Suite 111, Hermosa

4 Beach, CA 90254, with the address for its agent of service of process located at

5 223 N. First Avenue, Suite 103, Arcadia, CA 91006. This Court has jurisdiction

6 over Mobile Motion because its principal place of business is located in the state of

7 California, it has a regular and established pattern of business within the state of

8 California and its actions give rise to the claims pled herein have taken place in the

9 state of California and have caused the injury complained of herein within the state

10 of California.

11   9.  Upon information and belief, KIM is President and CEO of Mobile

12 Motion. KIM currently resides at 4608 Westchester Drive, Woodland Hills,

13 California, 91364. The Court has jurisdiction over KIM because KIM is domiciled

14 in the state of California and because KIM has committed a substantial portion of

15 the acts that give rise to the claims in this action within the state of California and

16 it is foreseeable that his actions would cause, and have caused, the injury

17 complained of herein within the state of California.

18   10.  Upon information and belief, E DATING is and was a corporation

19 organized under the laws of the state of California and with a regular and

20 established place of business located at 1229 Hermosa Avenue, 3rd Floor, Hermosa

21 Beach, California 90254. This Court has jurisdiction over E DATING because its

22 principal place of business is located in the state of California, it has a regular and

23 established pattern of business within the state of California and its actions give

24 rise to the claims pled herein have taken place in the state of California and have

25 caused the injury complained of herein within the state of California.

26   11.  Upon information and belief, additional unidentified parties, currently

27 identified as DOES 1 through 10, bear liability for the wrongful acts detailed in

28 this complaint.

Case 2:11-mc-00038-KJM -EFB   Document 4-3   Filed 05/11/11   Page 6 of 70
Case 2:11-cv-01966-CAS -AGR   Document 64   Filed 04/29/11   Page 5 of 24   Page ID
#:1498

12. Venue is proper in this jurisdictional district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims pled have occurred in this jurisdictional district and both Mobile and E DATING reside within this jurisdictional district.

## PRELIMINARY ALLEGATIONS

**A.   Alter Ego Allegations.**

13. Plaintiffs allege, on information and belief, that at all times mentioned herein, each of the Mobile were and are the agents, servants, employees, representatives and/or alter egos of the other Mobile, and in doing the things herein mentioned were acting within the scope of their relationship as such agents, servants, representatives and/or alter egos, with the permission and consent of the remaining Mobile.

14. Furthermore, Plaintiffs are informed and believe, and based thereon allege, that there exists, and at all times mentioned there existed, a unity of interest and ownership between Mobile Motion, on the one side, and KIM, on the other side, such that any individuality and separateness between Mobile Motion, on the one side, and KIM, on the other side, never existed or has ceased, and Mobile Motion is the alter ego of KIM such that Mobile Motion and KIM, and each of them:

    a. Purchased corporate assets with personal funds;

    b. Withdrew and used corporate funds for personal use;

    c. Failed to maintain adequate corporate records;

    d. Failed to hold any meetings, including organizational meeting, any members' meetings or board of directors meetings;

    e. Appointed a managing member without holding elections or obtaining consent of members;

    f. Failed to maintain records or minutes of directors and/or meetings or minutes of any corporate proceedings;

g. Carried on the business in the corporate name without regard to the corporate entity, exercising complete control and dominance of such business to such an extent that any individuality or separateness did not exists; and

h. Used the corporate form in an attempt to avoid personal liability on contractual obligations and personal liabilities.

15. Adherence to the fiction of the corporate existence of Mobile Motion as an entity distinct from KIM would permit an abuse of corporate privilege and would sanction fraud and promote injustice in the transfer of assets between them, without consideration to others, without regard to the actual legal or equitable title.

16. Plaintiffs are informed and believe, and based thereon allege that KIM holds himself out as a managing agent of Mobile Motion, and all representations made by him, and all acts and omissions of KIM as set forth herein are authorized and ratified by Mobile Motion.

17. Plaintiffs allege, on information and belief, that Mobile are jointly and severally liable for the claims asserted herein in that each bears some responsibility for the torts asserted herein.

## FACTS MATERIAL TO THE CLAIMS ALLEGED HEREIN

**A.**   **Business Operations and Background of Parties**

18. On information and belief, Mobile Motion and KIM are internet marketers for small business that provide online services to clients which include, but are not limited to search engine optimization ("SEO") services, Pay-Per-Click advertising and Pay-Per-Call services.

19. Plaintiffs are sellers and installers of overhead garage doors for residential and commercial consumers throughout the United States. Peter Stephens is the sole shareholder of both GLOBAL entities GLOBAL STRATEGIES and GLOBAL SERVICES.

///

COHEN AND
RICHARDSON, PC
EL SEGUNDO, CALIFORNIA

6

FIRST AMENDED COMPLAINT

20. Prior to forming GLOBAL STRATEGIES and GLOBAL SERVICES, Peter Stephens was the sole shareholder and President of the following entities: (1) America's Alliance Overhead Door corporation, Inc., a Texas corporation ("America"); (2) Overhead Garage Door Services, Inc., a Florida corporation ("OGD"); (3) America's Choice Garage Door Services MN, Inc., an Arizona corporation ("ACG"); (4) Garage Door Service Company, Inc., a Florida corporation ("GDS"); (5) AAA Allstate Overhead Door Corporation, Inc., a Florida corporation ("AAA"); (6) America's Choice, Inc., a California corporation ("Choice"); and (7) ASAP Overhead Doors, Inc., a Washington corporation ("ASAP")("America", "OGD", "ACG", "GDS", "AAA", "Choice" and "ASAP" shall hereinafter be collectively referred to as the "Old Corporations".) The rights of all of these entities have been properly assigned to the GLOBAL entities as alleged herein below.

**B.** **The Agreement, the Assignments and Mobiles Willful and Bad Faith Representations**

21. In order to market the Old Corporations, which also sold and installed overhead garage doors, on or around September of 2003, Peter Stephens, on behalf of the Old Corporations, and each of them, on one hand and Mobile, on the other, entered into an oral agreement ("Agreement") for Mobile to provide internet marketing services to the Old Corporations in exchange for specified compensation from the Old Corporations.

22. Under the terms of the Agreement, the Old Corporations and Mobile agreed that Mobile would handle and oversee all internet marketing activities for the Old Corporations in furtherance of the Old Corporations' internet marketing campaign, including but not limited to servicing of the Old Corporations' websites, Pay-Per-Click advertising, SEO and domain name registration (the "Internet Services"). In exchange for these services, the Old Corporations agreed to pay Mobile a monetary commission of a percentage of the amount of revenue the Old

COHEN AND
RICHARDSON, PC
El Segundo, California

7

Case 2:11-mc-00038-KJM -EFB Document 4-3 Filed 05/11/11 Page 9 of 70
Case 2:11-cv-01966-CAS -AGR Document 64 Filed 04/29/11 Page 8 of 24 Page ID
#:1501

1  Corporations' received through the Internet Services.

2      23.    The parties agreed that the ownership of any and all Intellectual

3  Property, Domain Names, websites, Pay-Per-Click accounts and Pay-Per-Click

4  keywords purchased under such Pay-Per-Click accounts would be the sole property

5  of the Old Corporations. Under the Agreement, the parties understood and agreed

6  that Mobile would initially register the Domain Names to itself. Such registration

7  would be for the sole and specific benefit of the Old Corporations and the sole and

8  specific purpose of providing services related to an Internet Marketing Campaign,

9  until such time that the Old Corporations requested that such Domain Names be

10 transferred to the Old Corporations. Registration of the Domain Names in the name

11 of Mobile Motion, Inc. was at all times to be for the convenience of and at the

12 pleasure of the Old Corporations. At all times, the parties were aware that such

13 Domain Names were being purchased by the Old Corporations, and for the sole

14 benefit of the Old Corporations. It was also the understood and agreed between the

15 parties that the Domain Name registrations would be transferred to the Old

16 Corporations upon request to do so or upon termination of the Agreement between

17 the parties. At no time did the Old Corporations contemplate that Mobile would

18 fail to return the Domain Names upon request that they do so. At no time did the

19 Old Corporations contemplate that there would be any interest in the Domain

20 Names that would inure to the benefit of Mobile and/or any other entity.

21     24.    It was further understood and agreed between the parties that

22 Plaintiffs would be entitled to immediate access and use of any and all Pay-Per-

23 Click accounts and Pay-Per-Click keywords upon demand by Plaintiffs. Plaintiffs

24 and Mobile also agreed that the Agreement could be terminated at any time by

25 either party.

26     25.    Based upon the foregoing understanding, Agreement and meeting of

27 the minds, the Old Corporations and Mobile further agreed under the Agreement

28 that all services, fees and charges and other expenses related to obtaining and

COHEN AND
RICHARDSON, PC
El Segundo, California

8

FIRST AMENDED COMPLAINT

1   registering domain names, the websites, Pay-Per-Click accounts and key words

2   purchased under such accounts for the internet marketing campaign would be the

3   paid for by the Old Corporations with the Old Corporations' credit cards as set

4   forth below.

5       26.    On July 1, of 2008, the Old Corporations each assigned (the

6   "Assignments") all of their assets and contractual rights and obligations to

7   Plaintiffs, including but not limited to the Old Corporations' rights and obligations

8   under the Agreement alleged in paragraph 21 of this Complaint to Plaintiffs.  KIM

9   and Mobile Motion were aware of, recognized and ratified all rights under the

10  Assignments at the time that they occurred and KIM thereafter continued to

11  perform the Internet Services, and each of them, for Plaintiffs under the

12  Agreement.  As a result of the foregoing, Plaintiffs seek to enforce all rights and

13  remedies under the Agreement as alleged herein.  A copy of the Assignments

14  between the Old Corporations and Plaintiffs is attached hereto as Exhibit A.

15      27.    In reliance upon this Agreement and Mobiles' willful mis-

16  representations, Peter Stephens provided Mobile with various corporate credit

17  cards (the "Credit Cards") to use the same for the benefit of Plaintiffs in order set

18  up the Pay Per-Click Accounts and to register domain names for the benefit of

19  each of the respective Old Corporations' names, as well as other industry relevant

20  domain names, the rights to which have all now been assigned to Plaintiffs.   Peter

21  Stephens, on behalf of the Old Corporations and Plaintiffs, entrusted the Credit

22  Cards to Mobile for the specific purposes referenced above and for Mobile to

23  comply with its obligations under the Agreement and to no other.

24      28.    Upon receipt of the Credit Cards, Mobile purchased and registered

25  one hundred and eighteen (118) domain names (the "Domain Names") in Mobile

26  Motion's own name.  Unbeknownst to the Old Corporations, Mobile did so

27  intentionally, willfully and unlawfully with the intent to keep the Domain Names

28  registered to Mobile Motion, Inc.  Mobile's failure to ultimately transfer these

COHEN AND
RICHARDSON, PC
EL SEGUNDO, CALIFORNIA

9

FIRST AMENDED COMPLAINT

1   registrations to Plaintiffs and/or their predecessors-in-interest which constituted a

2   breach of the Agreement. . On information and belief, since 2003, Mobile (in

3   addition to the unlawful transfers to third parties as set forth below), in breach of

4   the Agreement, willfully and intentionally renewed and re-registered the Domain

5   Names annually in Mobile Motion's name with the knowledge that Mobile would

6   not later register the Domain Names to Plaintiffs as required under the Agreement,

7   thereby depriving Plaintiffs of their contractual rights to register the Domain

8   Names upon Plaintiffs' demand, and under the terms of the Agreement.  A list of

9   the Domain Names that Mobile purchased with the Old Corporations' Credit Cards

10  is attached and identified within Exhibit B to the Complaint and is hereby

11  incorporated by this reference.

12       29.    In addition to purchasing the Domain Names with bad faith intent,

13  Mobile also used the Credit Cards to intentionally, willfully and unlawfully open

14  various Google AdWord ("AdWord") Pay-Per-Click accounts and various

15  Microsoft AdCenter ("AdCenter") Pay-Per-Click accounts in the name of Mobile

16  Motion (instead of the Old Corporations and/or Plaintiffs) for the purported benefit

17  of Plaintiffs.  Since demanding access to the AdWord and AdCenter accounts on

18  and after September of 2010, Mobile has intentionally, willfully and unlawfully

19  denied Plaintiffs' access and use of the AdWord and AdCenter accounts and Pay-

20  Per-Click keywords in breach of the Agreement.  A schedule of the AdWord and

21  AdCenter accounts that Mobile improperly registered in Mobile Motion's name

22  and the Credit Cards that were used to register and purchase keywords and Pay-

23  Per-Click services under such accounts are attached to the Complaint as Exhibit C

24  and Exhibit D, respectively.

25       30.    In addition to Mobiles' use of Plaintiffs' Credit Cards as set forth

26  above, on information and belief, Mobile used the Credit Cards for personal and

27  business expenses unrelated to Mobiles' obligations under the Agreement.  In fact,

28  on information and belief, Plaintiff's believe that Mobile has used the Credit Cards

COHEN AND
RICHARDSON, PC
EL SEGUNDO, CALIFORNIA

10

FIRST AMENDED COMPLAINT

Case 2:11-mc-00038-KJM-EFB Document 4-3 Filed 05/11/11 Page 12 of 70
Case 2:11-cv-01966-CAS-AGR Document 64 Filed 04/29/11 Page 11 of 24 Page ID
#:1504

1   for purchases of goods and services unrelated to the Agreement.

2        31.   On or around September of 2010, Plaintiffs discovered that Mobile

3   had intentionally registered and continued to renew the Domain Names in Mobile

4   Motion's name and that Defendants were prohibiting access and use of the

5   AdWord and AdCenter accounts set up in the name of Mobile Motion and not

6   Plaintiffs for the sole purpose of misappropriating the Domain Names and AdWord

7   and AdCenter accounts from Plaintiffs after demand was made from Plaintiffs for

8   the same.   Since discovery of this fact after making demand on September of

9   2010, Plaintiffs have demanded and continue to demand the immediate transfer of

10  the registration of the Domain Names and access and use to the Google Ad Words

11  and Microsoft AdCenter accounts (which contain the Pay-Per-Click keyword

12  terms) to Global Distribution Services, Inc.; and Mobile has continually and

13  consistently failed and refused, and continue to fail and refuse, to return the

14  property rights to Plaintiffs in breach of the Agreement.

15       32.   Upon information and belief, Mobile Motion willfully and improperly

16  transferred the following domains names to E DATING, for the sole purpose of

17  transferring the right to register the domain names to a third party to prevent

18  Plaintiffs from obtaining the right to register the domains:

19               a. overheadgaragedoors.com

20               b. fortworthoverheaddoors.com

21               c. atlanta-garage-door-repair.com

22               d. bouldergaragedoorrepair.com

23               e. denvergaragedoorrepair.com

24               f. garagedoorrepairfortworth.com

25               g. irvine-garage-door-repair.com

26               h. minneapolis-garage-door-repair.com

27               i. orangecounty-garage-door-repair.com

28               j. orlando-garage-door-repair.com

1       k. phoenix-garage-door-repair.com

2       l. garagedoorrepairstpaul.com

3       m. sandiego-garage-door-repair.com

4       n. sanantoniogaragedoorrepair.com

5       o. seattlegaragedoorrepair.com

6       p. sanjosegaragedoorrepair.com

7       q. tampagaragedoorrepair.com

8   ((a)-(q) shall hereinafter be referred to as the "E DATING Domains")

9       33.    Upon information and belief, in a further attempt to hide the true

10  registrant of the Domain Names from Plaintiffs to prevent Plaintiffs from

11  recovering its right to register the Domain Names, Mobile and E DATING

12  willfully registered domains (c)-(q) (the "Private E DATING Domains"), as

13  identified in paragraph 30, with a private registration, through a third company

14  named Contactprivacy.com, which is believed to be a reseller and private

15  registration company owned and/or affiliated with Tucows. The private

16  registration is intended to keep the details of the registrant of a domain name

17  private and instead name the private registration company as the registrant (i.e.,

18  Contactprivacy.com).

19      34.    Although Contactprivacy.com is currently named as the registrant for

20  each of the Private E DATING Domains, on information and belief from

21  conducting a WHOIS search on www.networksolutions.com/whois-search,

22  Plaintiffs believe that the true registrant of each of the Private E DATING

23  Domains is E DATING. Particularly, because the contact addresses for the

24  registrant with respect to each of the Private E DATING Domains is the business

25  address for E DATING.

26      35.    Upon further information and belief Mobile also willfully and

27  intentionally procured a private registration company named Domains By Proxy,

28  Inc. to hide the registrant information for some of the Domain Names. These

COHEN AND
RICHARDSON, PC
EL SEGUNDO, CALIFORNIA

12

FIRST AMENDED COMPLAINT

Case 2:11-mc-00038-KJM -EFB   Document 4-3   Filed 05/11/11   Page 14 of 70
Case 2:11-cv-01966-CAS -AGR   Document 64   Filed 04/29/11   Page 13 of 24   Page ID
#:1506

1  domains are identified as follows: (1) sacremento-garage-door.com; (2) charlotte-

2  garage-door.com; (3) dallas-garage-doors.com; (4) houston-garage-door.com; (5)

3  sanantonio-garage-door.com; (6) atlanta-garage-door.com; (7) austin-garage-

4  door.com; (8) boston-garage-door.com; (9) columbusgaragedoor.com; (10)

5  lasvegas-garage-door.com; (11) losangeles-garage-door.com;

6  (12) louisvillegaragedoor.com; (13) miami-garagedoors.com;

7  (14) milwaukee-garage-doors.com; (15) minneapolis-garage-door.com; (16)

8  omaha-garage-door.com; (17) orlando-garage-door.com; (18) philadelphia-garage-

9  door.com; (19) phoenix-garage-door.com; (20) renogaragedoor.com; (21)

10  sacremento-garage-door.com; (22) sanantonio-garage-door.com; (23) sanjose-

11  garage-door.com (collectively, the "Other Private Domains.")  Upon information

12  and belief, Plaintiffs believe that the current registrant of each of the Other Private

13  Domains is Mobile.

14      36.    At the time of the registration of the Domain Names (as set forth in

15  paragraph 27), (as set forth in paragraph 30) the transfer of the registration of the E

16  DATING Domains, (as set forth in paragraph 31) the transfer of the registration of

17  the Private E DATING Domains to Contactprivacy.com (as set forth in paragraph

18  31) and the (as set forth in paragraph 33) transfer of the Other Private Domains to

19  Domains By Proxy, Inc. (as set forth in paragraph 33), E DATING and Mobile

20  knew Plaintiffs were the owners of the rights to register the Domain Names, E

21  DATING Domains, Private E DATING Domains and Other Private Domains.

22  Despite such knowledge, E DATING and Mobile registered the Domain Names, E

23  DATING Domains, Private E DATING Domains and Other Private Domains for

24  Mobiles' and E DATING's use with willful disregard for the rights of Plaintiffs

25  and with the intent to defraud Plaintiffs.  In fact, on information and belief, E

26  DATING is an affiliated entity of Mobile Motion and the corporate structure and

27  ownership between the parties are so identical that each entities' interests are

28  aligned.

COHEN AND
RICHARDSON, PC
EL SEGUNDO, CALIFORNIA

13

FIRST AMENDED COMPLAINT

Case 2:11-mc-00038-KJM-EFB Document 4-3 Filed 05/11/11 Page 15 of 70
Case 2:11-cv-01966-CAS-AGR Document 64 Filed 04/29/11 Page 14 of 24 Page ID
#:1507

37.     Prior to discovering Mobile's conduct, Plaintiffs relied on the representations of Mobile and had no grounds for suspicion that Mobile would misappropriate the Domain Names.  Plaintiffs' reliance on the representations of Mobile was reasonable because under the Agreement the Domain Names were initially to be in the name of Mobile for the purpose of operating Plaintiffs' Internet Marketing Campaign, and were not to be transferred until Plaintiffs' demanded that they do so.  Plaintiffs' relied on the representations of Mobile and had no grounds for suspicion that Mobile would misappropriate and withhold access to the AdWord account and AdCenter account as a result of the Agreement between the parties and because access was not demanded until September of 2010.  As a result, Plaintiffs were never aware of any facts that made Plaintiff suspicious of the veracity of the Mobiles' representations until on or about September of 2010, when the Plaintiffs were forced to determine the facts set forth above as a result of a pending litigation matter in Atlanta and San Diego related to the Domain Names, AdCenter and AdWord accounts.

## FIRST CAUSE OF ACTION

### (Violation of Anti-Cybersquatting Protection Act 15 U.S.C. § 1125(d)
### against Mobile Motion, Inc., Doron Kim and Does 1-10)

38.     Plaintiffs hereby incorporate by reference and reallege each and every allegation of Paragraphs 1 through 37 above.

39 .     In registering and renewing annually the Domain Names in Mobile Motion's name and using the Domain Names from the date of the Agreement until present, never intending to transfer the Domain Names upon Plaintiffs demand to do so as required under the Agreement, Mobile willfully and intentionally misrepresented the true owner of the Domain Names, with bad faith intent and with the objective of withholding the Domain Names from Plaintiffs so that they could profit from the Domain Names.  Particularly, Mobile registered and used the Domain Names for the sole purpose of and in a manner preventing Plaintiffs from

1   seeking other vendors to market its website, thereby allowing Mobile to obtain a

2   superior bargaining position and additional profits under the Agreement.   On

3   information and belief, Mobile further registered the Domain Names with the bad

4   faith intent to sell and/or exchange the Domain Names with Plaintiffs after the

5   Agreement was terminated.

6        40.    Furthermore, on information and belief, at the time the marks were

7   registered as domain names and during the period the Domain Names were used by

8   Defendants and E Dating, the marks contained within the Domain Names were

9   famous and widely recognized by the general consuming public of the United

10   States as a designation of the source of the goods and services of Plaintiffs' garage

11   door services business. As a result, the marks contained within the Domain Names

12   have acquired secondary meaning as Plaintiffs have used the marks in such a way

13   that the marks primary significance in the minds of the prospective consumer is not

14   the product itself, but the identification of the goods and services with Plaintiffs'

15   business.

16        41.    All of the Domain Names have at all times relevant herein, been

17   directed to the websites of the Old Corporations bearing the phone numbers, names

18   and trademarks of Plaintiffs.  As such, the use by Defendants of the Domain

19   Names was also a use of Plaintiffs' trademarks in a manner intended to capitalize

20   upon and profit from the use of those marks.

21        42.    This use was with the consent of the Old Corporations up until the

22   time that Plaintiffs demanded the return of the Domain Names at which point the

23   consent was revoked, vitiated and terminated.  Thereafter, all use by Defendants

24   was direct and intentional and in violation of the common law trademark rights of

25   Plaintiffs.

26        43.    Mobiles' conduct entitles Plaintiffs to an order forfeiting Mobiles'

27   right to the Domain Names and an order transferring the Domain Names to

28   Plaintiffs, as well as any damages in an amount to be proved at trial.

COHEN AND
RICHARDSON, PC
EL SEGUNDO, CALIFORNIA

15

FIRST AMENDED COMPLAINT

Case 2:11-mc-00038-KJM -EFB   Document 4-3   Filed 05/11/11   Page 17 of 70
Case 2:11-cv-01966-CAS -AGR   Document 64   Filed 04/29/11   Page 16 of 24   Page ID
#:1509

## SECOND CAUSE OF ACTION

### (Breach of Oral Contract

### against Mobile Motion, Inc., Doron Kim and Does 1-10)

44.   Plaintiffs hereby incorporate by reference and reallege each and every allegation of Paragraphs 1 through 37 above.

45.   On or about September 2003, the Old Corporations and Mobile entered into the Agreement.   In or about July 1, 2008, the Old Corporations and Plaintiffs entered into the Assignments wherein the Old Corporations assigned all of their assets and contractual rights and obligations to Plaintiffs.

46.   Plaintiffs have performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Agreement, except those that were excused because of Mobiles' defaults under the Agreement and common law.

47.   Mobile breached the Agreement multiple times as follows:

(1)  Mobile intentionally, unlawfully and willfully registered the Domain Names to Mobile Motion, Inc. never intending to transfer the Domain Names upon Plaintiffs' demand to do so, as required under the Agreement;

(2)  Mobile refused and continues to refuse to transfer the registration of the Domain Names to Plaintiffs despite numerous demands made by Plaintiffs to Mobile to do so in breach of the Agreement since September of 2010.

(3)  On information and belief, Mobile has used Plaintiffs' Credit Cards for a use other than the Internet Services and other than as authorized;

(4)  Mobile intentionally, willfully and unlawfully opened various AdWord and AdCenter accounts in Mobile Motion's own name, thereby depriving Plaintiffs of access to and use of the AdWord and AdCenter accounts and the Pay-Per-Click keywords and failed to transfer such

Case 2:11-mc-00038-KJM -EFB    Document 4-3    Filed 05/11/11    Page 18 of 70
Case 2:11-cv-01966-CAS -AGR    Document 64    Filed 04/29/11    Page 17 of 24    Page ID
#:1510

1    accounts to Plaintiffs after demand was made on and after September of

2    2010;

3             (4)  On or around September of 2010, and numerous times thereafter,

4    Mobile breached the Agreement by failing to transfer the Domain Names to

5    Plaintiffs upon demand as required under the Agreement and breached the

6    Agreement by denying Plaintiffs access and use of the AdWord and

7    AdCenter accounts despite repeated demands by Plaintiffs.

8        48.    As a result of Mobiles' various breaches of the Agreement, Plaintiffs

9    have sustained damages in an amount according to proof at trial.

10                         **THIRD CAUSE OF ACTION**

11                   **(Breach of Implied-In-Fact Contract**

12        **against Mobile Motion, Inc., Doron Kim and Does 1-10)**

13        49.    Plaintiffs hereby incorporate by reference and reallege each and every

14    allegation of Paragraphs 1 through 37 and Paragraphs 44 through 48 above.

15        50.    Based on the conduct and relationship between the parties as set forth

16    above, as well as the events alleged herein, an implied-in-fact contract has been

17    created between Plaintiffs and Mobile.

18        51.    Plaintiffs have performed all conditions, covenants, and promises

19    required on its part to be performed in accordance with the terms and conditions of

20    the implied-in-fact contract, except those that were excused because of Mobiles'

21    defaults under the Agreement and common law.

22        52.    Mobile has breached the implied-in-fact contract multiple times as

23    more particularly described in paragraph 47 above.

24        53.    As a result of Mobiles' various breaches of the Agreement, Plaintiffs

25    have sustained damages in an amount according to proof at trial.

26    ///

27    ///

28    ///

COHEN AND
RICHARDSON, PC
EL SEGUNDO, CALIFORNIA

17

FIRST AMENDED COMPLAINT

**FOURTH CAUSE OF ACTION**

**(Breach of Implied Covenant of Good Faith and Fair Dealing**

**against Mobile Motion, Inc., Doron Kim and Does 1-10)**

54. Plaintiffs hereby incorporate by reference and reallege each and every allegation of Paragraphs 1 through 37 and Paragraphs 44 through 48 above.

55. In addition to the various breaches identified above, particularly within paragraph 47, Mobile has also breached the implied-in-fact contract and an implied promise under the Agreement by (1) unfairly interfering with Plaintiffs right to register the Domain Names and (2) unfairly interfering with Plaintiffs right and use of intellectual property, including access and use to the Adwords and Adcenter accounts in breach of the parties implied promise of Good Faith and Fair Dealing. By registering the Domain Names in Mobile's name and setting up the Adword and Adcenter accounts in Mobile's name, Mobile benefitted at severe damage to Plaintiffs by depriving Plaintiffs of the right to register the Domain Names and the right to access the AdCenter and AdWords accounts, once Plaintiffs had demanded Defendants the transfer of the Domain Names and the right to access and use the AdCenter and AdWords accounts under the Agreement and failing to return them after demand was made to do the same.

56. As a result of Mobiles' various breaches of the Agreement, Plaintiffs have sustained damages in an amount according to proof at trial.

**FIFTH CAUSE OF ACTION**

**(Conversion against all Defendants)**

57. Plaintiffs hereby incorporate by reference and reallege each and every allegation of Paragraphs 1 through 37 and paragraph 47 above.

58. At all times herein mentioned since the date the Domain Names were registered, including the E DATING Domains, Private E DATING Domains and Other Private Domains (collectively, the "Domain Names"), and since the date the AdCenter and AdWord accounts were opened and formed, Plaintiffs were, and still

COHEN AND
RICHARDSON, PC
EL SEGUNDO, CALIFORNIA

FIRST AMENDED COMPLAINT

Case 2:11-mc-00038-KJM-EFB Document 4-3 Filed 05/11/11 Page 20 of 70
Case 2:11-cv-01968-CAS-AGR Document 64 Filed 04/29/11 Page 19 of 24 Page ID
#:1512

1  are, entitled to the ownership of the right to register the Domain Names and right

2  to access the AdCenter and Adword accounts; including ownership of the

3  intellectual property, including the Pay-Per-Click Key Words contained within the

4  AdWord and AdCenter accounts.

5      59.    Despite Plaintiffs' right to ownership and access, on or about

6  September of 2003, and at various times thereafter, Mobile unilaterally registered

7  the Domain Names and opened the AdCenter and AdWords accounts in Mobile

8  Motion's name without Plaintiffs' authority, with the intent to permanently deprive

9  Plaintiffs of its right to register the Domain Names and access and use of the

10  AdCenter and AdWord accounts, thereby unlawfully converting the same to

11  Mobiles' use.  Mobile thereafter annually renewed the Domain Names in the name

12  of Mobile Motion as registrant to continue such use.

13      60.    Furthermore, after learning that Plaintiffs were demanding the right to

14  register the Domains and/or in anticipation of such demand, Mobile unilaterally

15  transferred the E DATING Domains, including the Private E DATING Domains to

16  E DATING thereby converting the same to E DATING's use.

17      61.    At the time Mobile and E DATING converted the property, Mobile

18  and E DATING were guilty of malice, oppression, and a willful and conscious

19  disregard for the rights of Plaintiffs in that Mobile and E DATING converted the

20  property with reckless indifference and willful and conscious disregard for the

21  rights of Plaintiffs when the conversion occurred because each party knew that

22  Plaintiffs were owners of the right to register the Domain Names.

23      62.    Further, after knowledge and notice of Plaintiffs' interest in the

24  converted property was given to Mobile and E DATING, Mobile and E DATING

25  failed and refused, and continue to fail and refuse, to transfer the Domain Names.

26  Mobile has further refused to transfer the AdWord and AdCenter accounts,

27  including the Pay-Per-Click key words for such accounts to Plaintiffs.  By reason

28  of these acts Plaintiffs have been oppressed and seek punitive and exemplary

1   damages.

2        63.    No adequate remedy exists at law for the injuries suffered by

3   Plaintiffs herein, insofar as further harm will result to Plaintiffs from the Mobiles'

4   and E DATING's wrongful act of conversion absent injunctive relief. If this Court

5   does not grant injunctive relief of the type and for the purpose specified herein,

6   Plaintiff will suffer irreparable injury. Therefore, Plaintiff requests the following

7   injunctive relief: an Order transferring the Domain Names and the AdCenter and

8   AdWord accounts to Global Distribution Services, Inc.

9                          **FIFTH CAUSE OF ACTION**

10              **(Fraud – Intentional Misrepresentation**

11         **against Mobile Motion, Inc., Doron Kim and Does 1-10)**

12       64.    Plaintiffs hereby incorporate by reference and reallege each and every

13   allegation of Paragraphs 1 through 37 and Paragraphs 58, 59, 60 and 61 above.

14       65.    On or about September of 2003, Mobile represented to Plaintiffs

15   through Kim on the date the parties entered into the Agreement and in exchange

16   for the Credit Cards that Mobile would (1) register the Domain Names in the name

17   of Global Distribution Services, Inc. and/or its predecessors-in-interest upon

18   Plaintiffs' demand, (2) establish and maintain the AdWord accounts in the name of

19   Global Distribution Services, Inc. upon Plaintiffs' demand, (3) establish and

20   maintain the AdCenter accounts in the name of Global Distribution Services, Inc.

21   upon Plaintiffs' demand,(4) at all times allow Plaintiffs access to the account

22   information in connection with the AdWords and AdCenter accounts, including all

23   key words, intellectual property and financial data contained within such accounts

24   upon Plaintiffs' demand; and (5) use Plaintiffs' Credit Cards for the sole benefit of

25   Plaintiffs as required under the Agreement.

26       66.    When Mobile made the representations, Mobile knew them to be false

27   and made the representations with the intention to deceive and defraud the

28   Plaintiffs and to induce the Plaintiffs to act in reliance of his representations in the

COHEN AND
RICHARDSON, PC
EL SEGUNDO, CALIFORNIA

20

FIRST AMENDED COMPLAINT

Case 2:11-mc-00038-KJM-EFB   Document 4-3   Filed 05/11/11   Page 22 of 70
Case 2:11-cv-01966-CAS-AGR   Document 64   Filed 04/29/11   Page 21 of 24   Page ID
#:1514

1  matters herein alleged above, or with the expectation that the Plaintiffs would do

2  so act.

3      67.    Plaintiffs, at the time these representations were made by the Mobile

4  and at the time the Plaintiffs took the actions herein alleged, were ignorant of the

5  falsity of the Mobiles' representations and believed them to be true.  In reliance on

6  these representations, Plaintiffs were induced to and did enter into the Agreement

7  with Mobile and provided Mobile with Plaintiffs' Credit Cards in order to purchase

8  the Domain Names and obtain the AdCenter and AdWord accounts, with the right

9  to purchase Pay-Per-Click key words.  Had Plaintiffs known that Mobile was

10 intentionally going to misappropriate the right to register the Domain Names and

11 ownership of the AdCenter and AdWord accounts, Plaintiffs would not have taken

12 such actions.  Plaintiffs' reliance on the Mobiles' representations was justified

13 because Mobile had contractual obligations under the Agreement, including an

14 implied obligation of good faith and fair dealing and were entrusted with Plaintiffs'

15 Credit Cards, creating a trust relationship.

16     68.    As a proximate result of the fraudulent conduct of Mobile as alleged

17 herein, Plaintiffs have been unable to access the Domain Names and the AdCenter

18 and AdWord accounts for its business use since demand was made, which is

19 essential to Plaintiffs' marketing, business model and brand, by reason of which

20 Plaintiffs have been damaged in an amount to be determined according to proof at

21 trial.

22     69.    The aforementioned conduct of Mobile was an intentional

23 misrepresentation, deceit, or concealment of a material fact known to the Mobile

24 with the intention of the part of Mobile of thereby depriving Plaintiffs of property

25 or legal rights or otherwise causing injury, and was despicable conduct that

26 subjected Plaintiffs to a cruel and unjust hardship in conscious disregard of

27 Plaintiffs' rights, so as to justify an award of exemplary and punitive damages.

28 ///

COHEN AND
RICHARDSON, PC
El Segundo, California

21

FIRST AMENDED COMPLAINT

# **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs hereby pray for judgment and other relief against Mobile and E Dating jointly and severally, as follows:

**As to the First Cause of Action:**

1. An award of injunctive relief in the form of an Order transferring the registration of the Domain Names to Global Distribution Services, Inc., making GDS the registrant of the Domain Names;

2. Actual, incidental and consequential damages, including lost profits, loss of use, annoyance, and inconvenience OR statutory damages not less than $1,000.00 and not more than $100,000.00 per domain name as the Court considers just, pursuant to 15 U.S.C. § 1117; and

3. For such other and further relief that the Court finds just and equitable.

**As to the Second Cause of Action:**

1. For general damages in an amount according to proof at trial;

2. For consequential damages in an amount according to proof at trial; and

3. For such other and further relief that the Court finds just and equitable.

**As to the Third Cause of Action:**

1. For general damages in an amount according to proof at trial;

2. For consequential damages in an amount according to proof at trial; and

3. For such other and further relief that the Court finds just and equitable.

**As to the Fourth Cause of Action:**

1. For general damages in an amount according to proof at trial;

2. For consequential damages in an amount according to proof at trial; and

3. For such other and further relief that the Court finds just and equitable.

**As to the Fifth Cause of Action:**

1. An award of injunctive relief in the form of an Order transferring the Domain Names, and the AdCenter and the AdWord accounts to Global Distribution Services, Inc., including access to all Pay-Per-Click key

1     words under the AdCenter and AdWord accounts to Plaintiffs;

2     2. For damages of the proximate and foreseeable loss resulting from

3       Mobiles' and E Dating's conversion in an amount according to proof at

4       trial;

5     3. For damages for the time and money properly expended in pursuit of the

6       converted property in an amount according to proof at trial;

7     4. For punitive and exemplary damages; and

8     5. For such other and further relief as the Court may deem proper.

9 **As to the Sixth Cause of Action:**

10     1. For general damages in an amount according to proof at trial;

11     2. For special damages, including lost profits, loss of use, annoyance and

12       inconvenience in a sum according to proof at trial;

13     3. For punitive damages in an amount appropriate to punish the Mobile and

14       E Dating and to deter others from engaging in similar misconduct; and

15     4. For such other and further relief as the Court deems proper.

16 **As to All Causes of Action**

17     1. For a temporary restraining order, preliminary injunction and permanent

18       injunction against Mobile and E DATING ordering the transfer of the

19       Domain Names, AdCenter accounts and the AdWord accounts to Global

20       Distribution Services, Inc., including access to all Pay-Per-Click key

21       words under the AdCenter and AdWord accounts to Plaintiffs; OR, in the

22       alternative an order enjoining Mobile and E DATING from (1) accessing,

23       transferring and/or otherwise making changes to the Domain Names and

24       the domain names settings; (2) accessing, transferring and/or otherwise

25       making changes to the AdWord and AdCenter accounts, including the

26       Pay-Per-Click key words contained therein.

27 ///

28 ///

Case 2:11-mc-00038-KJM-EFB  Document 4-3  Filed 05/11/11  Page 25 of 70
Case 2:11-cv-01968-CAS-AGR  Document 64  Filed 04/29/11  Page 24 of 24  Page ID
#:1517

1                 **DEMAND FOR JURY TRIAL**

2       Pursuant to Federal Rule of Civil Procedure section 38, Plaintiff hereby

3 demands a trial by jury on its claims.

4

5 DATED: April 29, 2011

                       COHEN & RICHARDSON, PC

6

7

8                        /s/ Jeffrey A. Cohen

9                        JEFFREY A. COHEN, [State Bar 149615]
                       jcohen@corichlaw.com

10                       ERIK S. VELIE, [State Bar 252446]
                       evelie@corichlaw.com

11                        COHEN & RICHARDSON, PC
                       2321 Rosecrans Avenue, Suite 4210

12                        El Segundo, CA  90245-4911
                       Telephone: (310) 469-9600

13                        Fax: (310) 469-9610
                       Attorneys for: Global Development

14                        Strategies, Inc. and Global Distribution
                       Services, Inc.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COHEN AND
RICHARDSON, PC
EL SEGUNDO, CALIFORNIA

FIRST AMENDED COMPLAINT

Case 2:11-mc-00628-KJM-EFB   Document 4-3   Filed 05/11/11   Page 26 of 70
Case 2:11-cv-01966-CAS-AGR   Document 64   Filed 04/29/11   Page 1 of 6   Page ID
#:1518

# EXHIBIT A

PD145

Case 2:11-mc-00038-KJM-EFB   Document 4-3   Filed 05/11/11   Page 27 of 70
Case 2:11-cv-01960-CAS-AGR   Document 64   Filed 04/29/11   Page 2 of 96   Page ID
#:1519



Assignment
A AAA Allstate Overhead Garage Door, Inc to Global Development Strategies, Inc
July 1, 2008

A AAA Allstate Overhead Garage Door, Inc., a Florida corporation ("Transferor"), hereby assigns
and transfers to Global Development Strategies, Inc., a Nevada corporation ("Transferee"), all of
Transferor's right, title and interest in and to all of Transferor's assets (both tangible and intangible),
and Transferee hereby accepts all of such assets and assumes all of Transferor's liabilities.

Transferor:

A AAA Allstate Overhead Garage Door, Inc.,
a Florida corporation

By: _____
Peter Stephens, President

Transferee:

Global Development Strategies, Inc.,
a Nevada corporation

By: _____
Marlene Stephens, President

P:\0064\4822.14A\61-064
1 to 9

PD146

Case 2:11-cv-00988-KJM-EFB   Document 4-3   Filed 05/11/11   Page 28 of 70
Case 2:11-cv-01968-GAS-AGR   Document 64   Filed 04/29/11   Page 3 of 96   Page ID
#:1520

Assignment
A ASAP Overhead Doors, Inc. to Global Development Strategies, Inc.
July 1, 2008

A ASAP Overhead Doors, Inc., a Washington corporation ("Transferor"), hereby assigns and
transfers to Global Development Strategies, Inc., a Nevada corporation ("Transferee"), all of
Transferor's right, title and interest in and to all of Transferor's assets (both tangible and intangible),
and Transferee hereby accepts all of such assets and assumes all of Transferor's liabilities.

Transferor:                              A ASAP Overhead Doors, Inc.,
                                         a Washington corporation

                                         By _____
                                            Peter Stephens, President

Transferee:                              Global Development Strategies, Inc.,
                                         a Nevada corporation

                                         By _____
                                            Marlene Stephens, President

P.00634#2A 14A63.093
2 to 9

PD147



Assignment
America's Alliance Overhead Door Corporation to Global Distribution Services, Inc.
July 1, 2008

America's Alliance Overhead Door Corporation, a Texas corporation ("Transferor"), hereby assigns
and transfers to Global Distribution Services, Inc., a Nevada corporation ("Transferee"), all of
Transferor's right, title and interest in and to all of Transferor's assets (both tangible and intangible),
and Transferee hereby accepts all of such assets and assumes all of Transferor's liabilities.

Transferor:

America's Alliance Overhead Door Corporation,
a Texas corporation

By _____
Peter Stephens, President

Transferee:

Global Distribution Services, Inc.,
a Nevada corporation

By _____
Marlene Stephens, President

P 00604046 14865 366
) 1 o 8

**PD148**



Assignment
America's Choice Garage Door Service-MN, Inc. to Global Distribution Services, Inc
July 1, 2008

America's Choice Garage Door Service-MN, Inc., an Arizona corporation ("Transferor"), hereby assigns and transfers to Global Distribution Services, Inc., a Nevada corporation ("Transferee"), all of Transferor's right, title and interest in and to all of Transferor's assets (both tangible and intangible), and Transferee hereby accepts all of such assets and assumes all of Transferor's liabilities.

Transferor:

America's Choice Garage Door Service-MN, Inc.,
an Arizona corporation

By _____
Peter Stephens, President

Transferee:

Global Distribution Services, Inc.,
a Nevada corporation

By _____
Marlene Stephens, President

P 50694942 14A63 007
4 to 8

**PD149**



Assignment
America's Choice, Inc. to Global Development Strategies, Inc.
July 1, 2003

America's Choice, Inc., a California corporation ("Transferor"), hereby assigns and transfers to Global Development Strategies, Inc., a Nevada corporation ("Transferee"), all of Transferor's right, title and interest in and to all of Transferor's assets (both tangible and intangible), and Transferee hereby accepts all of such assets and assumes all of Transferor's liabilities.

Transferor:

America's Choice, Inc.,
a California corporation

By: _____
Peter Stephens, President

Transferee:

Global Development Strategies, Inc.,
a Nevada corporation

By: _____
Marlene Stephens, President

F:\0643\441\14A63.008
3 to 0

**PD150**

Case 2:11-cv-01960-CAS-AGR Document 64-1 Filed 04/29/11 Page 7 of 6



Assignment
Garage Door Service Company, Inc. to Global Development Strategies, Inc.
July 1, 2008

Garage Door Service Company, Inc., a Florida corporation ("Transferor"), hereby assigns and transfers to Global Development Strategies, Inc., a Nevada corporation ("Transferee"), all of Transferor's right, title and interest in and to all of Transferor's assets (both tangible and intangible), and Transferee hereby accepts all of such assets and assumes all of Transferor's liabilities

Transferor:                          Garage Door Service Company, Inc.,
                                     a Florida corporation

                                     By _____
                                        Peter Stephens, President

Transferee:                          Global Development Strategies, Inc.,
                                     a Nevada corporation

                                     By _____
                                        Marlene Stephens, President

F:\006d#049 14A65 009
\6 to 9

**PD151**

Case 2:11-cv-01966-CAS-AGR Document 4-3 Filed 05/11/11 Page 33 of 70
Case 2:11-mc-00628-KJM-EFB Document 64 Filed 04/29/11 Page 8 of 46 Page ID
#:1525



Assignment
Overhead Garage Door Services, Inc. to Global Distribution Services, Inc
July 1, 2008

Overhead Garage Door Services, Inc., a Florida corporation ("Transferor"), hereby assigns and transfers to Global Distribution Services, Inc., a Nevada corporation ("Transferee"), all of Transferor's right, title and interest in and to all of Transferor's assets (both tangible and intangible), and Transferee hereby accepts all of such assets and assumes all of Transferor's liabilities.

Transferor:

        Overhead Garage Door Services, Inc.,
        an Florida corporation

        By _____
        Peter Stephens, President

Transferee:

        Global Distribution Services, Inc.,
        a Nevada corporation

        By _____
        Marlene Stephens, President

P.00424945.14&65.010
7.4 of 8

PD152

# EXHIBIT B

PD153

| Domain Name | Type |
| --- | --- |
| ATLANTAOVERHEADDOOR.COM | Already Transferred |
| BOULDEROVERHEADDOORS.COM | Primary |
| CHARLOTTEOVERHEADDOOR.COM | Primary |
| CHICAGOGARAGEDOORS.COM | Primary |
| DALLASOVERHEADDOOR.COM | Primary |
| DAYTONABEACHOVERHEADDOORS.COM | Primary |
| DENVEROVERHEADDOORS.COM | Primary |
| FORTWORTHOVERHEADDOORS.COM | Primary |
| HOUSTONGARAGEDOOR.COM | Primary |
| JACKSONVILLEOVERHEADDOORS.COM | Primary |
| LASVEGASOVERHEADDOORS.COM | Primary |
| LONGBEACHOVERHEADDOORS.COM | Primary |
| ORANGECOUNTYOVERHEADDOORS.COM | Primary |
| ORLANDOOVERHEADDOORS.COM | Primary |
| PHOENIXOVERHEADDOORS.COM | Primary |
| SACRAMENTOOVERHEADDOORS.COM | Primary |
| SANANTONIOOVERHEADDOORS.COM | Primary |
| SANDIEGOOVERHEADDOORS.COM | Primary |
| SANJOSEOVERHEADDOORS.COM | Primary |
| SEATTLEOVERHEADDOORS.COM | Primary |
| TAMPAOVERHEADDOORS.COM | Primary |
| TWINCITYGARAGEDOORS.COM | Primary |
| GARAGEDOORSATLANTA.COM | Redirect |
| GARAGEDOORSDALLAS.COM | Redirect |
| GARAGEDOORSDENVER.COM | Redirect |
| GARAGEDOORSJACKSONVILLE.COM | Redirect |
| GARAGEDOORSLASVEGAS.COM | Redirect |
| GARAGEDOORSORANGECOUNTY.COM | Redirect |
| GARAGEDOORSORLANDO.COM | Redirect |
| GARAGEDOORSPHOENIX.COM | Redirect |
| GARAGEDOORSSANANTONIO.COM | Redirect |
| GARAGEDOORSSANDIEGO.COM | Redirect |
| GARAGEDOORSSEATTLE.COM | Redirect |
| GARAGEDOORSTAMPA.COM | Redirect |
| JACKSONVILLEGARAGEDOORS.COM | Redirect |
| MINNEAPOLISGARAGEDOORS.COM | Redirect |
| MINNEAPOLISOVERHEADDOORS.COM | Redirect |
| ORANGECOUNTYOVERHEADDOOR.COM | Redirect |
| ORLANDOGARAGEDOORS.COM | Redirect |
| PHOENIXGARAGEDOORS.COM | Redirect |
| SAINTPAULGARAGEDOORS.COM | Redirect |
| SANANTONIOGARAGEDOOR.COM | Redirect |
| SANANTONIOOVERHEADDOOR.COM | Redirect |
| SANDIEGOOVERHEADDOOR.COM | Redirect |
| SANJOSEOVERHEADDOOR.COM | Redirect |

PD154

| | |
|---|---|
| SEATTLEGARAGEDOORS.COM | Redirect |
| SEATTLEOVERHEADDOOR.COM | Redirect |
| STPAULGARAGEDOORS.COM | Redirect |
| TAMPAGARAGEDOORS.COM | Redirect |
| atlanta-garage-door-repair.com | Repair |
| austin-garage-door-repair.com | Repair |
| bostongaragedoorrepair.com | Repair |
| bouldergaragedoorrepair.com | Repair |
| charlottegaragedoorrepair.com | Repair |
| dallas-garage-door-repair.com | Repair |
| denvergaragedoorrepair.com | Repair |
| detroitgaragedoorrepair.com | Repair |
| garagedoorrepairfortworth.com | Repair |
| garagedoorrepairomaha.com | Repair |
| garagedoorrepairstpaul.com | Repair |
| houston-garage-door-repair.com | Repair |
| irvine-garage-door-repair.com | Repair |
| minneapolis-garage-door-repair.com | Repair |
| neworleansgaragedoorrepair.com | Repair |
| orangecounty-garage-door-repair.com | Repair |
| orlando-garage-door-repair.com | Repair |
| OverheadGaragedoors.com | Repair |
| philadelphiagaragedoorrepair.com | Repair |
| phoenix-garage-door-repair.com | Repair |
| pittsburghgaragedoorrepair.com | Repair |
| portlandgaragedoorrepair.com | Repair |
| renogaragedoorrepair.com | Repair |
| richmondgaragedoorrepair.com | Repair |
| sacramentogaragedoorrepair.com | Repair |
| sanantoniogaragedoorrepair.com | Repair |
| sanbernardinogaragedoorrepair.com | Repair |
| sandiego-garage-door-repair.com | Repair |
| sanfranciscogaragedoorrepair.com | Repair |
| sanjosegaragedoorrepair.com | Repair |
| seattlegaragedoorrepair.com | Repair |
| stlouisgaragedoorrepair.com | Repair |
| tampagaragedoorrepair.com | Repair |
| tucson-garage-door-repair.com | Repair |
| AMERICASCHOICEDOORS.COM | Secondary |
| ATLANTAOVERHEADDOORS.COM | Secondary |
| DALLASOVERHEADDOORS.COM | Secondary |
| DENVERGARAGEDOORS.COM | Secondary |
| FIRSTCHOICEGARAGEDOORS.COM | Secondary |
| GARAGEDOORMASTERS.COM | Secondary |
| GARAGEDOORPROFESSIONALS.COM | Secondary |
| HOUSTONOVERHEADDOORS.COM | Secondary |
| JUSTGARAGEDOORREMOTES.COM | Secondary |

**PD155**

| | |
|---|---|
| JUSTGARAGEDOORS.COM | Secondary |
| LongBeachGarageDoors.com | Secondary |
| ORANGECOUNTYGARAGEDOORS.COM | Secondary |
| SANDIEGOGARAGEDOOR.COM | Secondary |
| atlanta-garage-door.com | Seyego |
| austin-garage-door.com | Seyego |
| boston-garage-door.com | Seyego |
| charlotte-garage-door.com | Seyego |
| columbusgaragedoor.com | Seyego |
| dallas-garage-doors.com | Seyego |
| houston-garage-door.com | Seyego |
| lasvegas-garage-door.com | Seyego |
| losangeles-garage-door.com | Seyego |
| louisvillegaragedoor.com | Seyego |
| miami-garagedoors.com | Seyego |
| milwaukee-garage-door.com | Seyego |
| minneapolis-garage-door.com | Seyego |
| omaha-garage-door.com | Seyego |
| orlando-garage-door.com | Seyego |
| philadelphia-garage-door.com | Seyego |
| phoenix-garage-door.com | Seyego |
| renogaragedoor.com | Seyego |
| sacramento-garage-door.com | Seyego |
| sanantonio-garage-door.com | Seyego |
| sanjose-garage-door.com | Seyego |
| seattle-garage-door.com | Seyego |
| americaschoiceoverheaddoor.com | |

# EXHIBIT C

PD157

SOCIAL ADVANCED

| LOCATION | CLIENT ID | MANAGER ID | LAST CHARGE AMOUNT & DATE | CARD ISSUER | NAME ON CARD | LAST FOUR DIGITS | EXP DATE | COMPANY NAME | MAILING ADDRESS | URL | KEYWORDS |
|---|---|---|---|---|---|---|---|---|---|---|---|

E:\Accounting\Advertising\Internet Marketing via AOL,CNN,MSN & MICROSOFT AD CENTER.xlsx

PD158

# EXHIBIT D

PD159

MICROSOFT AD CENTER

| LOCATION | ACCOUNT | LAST CHARGE AMT & DATE | CARD ISSUER | LAST 4 DIGITS | EXP. DATE | BILLING ADDRESS | URL | KEYWORDS |
|---|---|---|---|---|---|---|---|---|
| FORT WORTH | | | | | | | | |
| ATLANTA | 165-560-4708 | $500 14/22/2010 | VISA | 7398 | 07/2011 | PO BOX 15007 SAN DIEGO, CA 92189 | fortworthonetheaddoors.com & sandiegometaldoor.com | |
| HOUSTON | 208-273-9432 | $500 12/1/2013 | AMEX | 1007 | 08/2014 | PO BOX 15007 SAN DIEGO, CA 92189 | atlantaonetheaddoor.com | |
| SAN ANTONIO | 180-561-8126 | $1,000 5/28/2009 | AMEX | 1905 | Dec-10 | PO BOX 15007 SAN DIEGO, CA 92189 | houstongaragedoor.com | |
| CHARLOTTE | 200-581-4910 | $500 14/24/2010 | Amex | 1112 | 01/2014 | PO BOX 15007 SAN DIEGO, CA 92189 | sanantoniooverheaddoors.com | |
| MINNEAPOLIS | 212-414-4909 | $400 10/5/2010 | VISA | 1781 | 07/2011 | PO BOX 15007 SAN DIEGO, CA 92189 | charlotteonetheaddoors.com | Garage door service, Garage door repair, New garage door, |
| DENVER | 492-444-3660 | $400 11/17/2010 | AMEX | 1048 | 10/2011 | PO BOX 15007 SAN DIEGO, CA 92189 | menslsgaragedoors.com | |
| ORANGE COUNTY | 137-660-9149 | $250 14/16/2012 | AMEX | 1622 | 06/2013 | PO BOX 15007 SAN DIEGO, CA 92189 | denveroverheaddoors.com | Garage door installation, Broken Springs, |
| PHOENIX | 588-915-7849 | $400 11/17/2010 | VISA | 2067 | 08/2011 | PO BOX 15007 SAN DIEGO, CA 92189 | orangecountyoverheaddoors.com | Openers, Ultimatez, |
| SACRAMENTO | 200-795-3544 | $1,000 16/1/2010 | AMEX | 4548 | 07/2011 | PO BOX 15007 SAN DIEGO, CA 92189 | phoenixoverheaddoors.com | |
| SAN DIEGO | 449-451-3892 | $400 12/19/2010 | VISA | 1047 | 08/2011 | PO BOX 15007 SAN DIEGO, CA 92189 | sacramentooverheaddoors.com | Overhead garage door, Garage door motor, |
| SEATTLE | 245-412-1772 | $500 12/29/2010 | AMEX | 2810 | 07/2011 | PO BOX 15007 SAN DIEGO, CA 92189 | sandiegooverheaddoors.com | Garage door keypad, |
| SAN JOSE | 124-563-1322 | $400 1/14/2009 | AMEX | 3001 | 11/2011 | PO BOX 15007 SAN DIEGO, CA 92189 | seattleoverheaddoors.com | |
| TAMPA | 130-299-4541 | $1,000 12/28/2010 | VISA | 7370 | 08/2012 | PO BOX 15007 SAN DIEGO, CA 92189 | sanjoseoverheaddoors.com | Sectional, Safety eyes, Garage door remote, |
| ORLANDO | 114-561-0798 | | VISA | 1012 | 04/2013 | 9950 ATLANTIC AVE, #210 JACKSONVILLE, FL 32225 | tampaoverheaddoors.com | |
| | 133-190-1784 | | VISA | 1012 | 04/2013 | 7951 ATLANTIC AVE, #210 JACKSONVILLE, FL 32225 | orlandooverheaddoors.com | |

**EXHIBIT B**

1    **KRONENBERGER BURGOYNE, LLP**
2    Karl S. Kronenberger (SBN 226112)
     Jeffrey M. Rosenfeld (SBN 222187)
3    Virginia A. Sanderson (SBN 240241)          *NOTE CHANGES MADE BY THE COURT.*
4    150 Post Street, Suite 520
     San Francisco, CA 94108
5    Telephone: (415) 955-1155
6    Facsimile: (415) 955-1158
     karl@KBInternetLaw.com
7    jeff@KBInternetLaw.com
8    ginny@KBInternetLaw.com
9    Attorneys for Defendants Mobile Motion, Inc.,       *NOTE CHANGES MADE BY THE COURT.*
10   Doron Kim, and E Dating For Free, Inc.
11

12                      **UNITED STATES DISTRICT COURT**
13                      **CENTRAL DISTRICT OF CALIFORNIA**
14

15
     **GLOBAL DEVELOPMENT**                 Case No. CV11-01966 CAS
16   **STRATEGIES, INC.**, et al.,          (AGRx)
17            Plaintiffs,                    ~~[PROPOSED]~~ ORDER
18       vs.                                 **CONCERNING DISCOVERY**
                                             **AND CONFIDENTIALITY**
19
20   **MOBILE MOTION, INC.**, et al.,
21            Defendants.                    Before Hon. Christina A. Snyder
22

23
24                      *NOTE CHANGES MADE BY THE COURT.*
25
26
27
28

CASE NO. CV11-01966 CAS (AGRx)              [PROPOSED] DISCOVERY ORDER

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1    This [Proposed] Order Concerning Discovery and Confidentiality (the
2  "Discovery Order") between Plaintiffs Global Development Strategies, Inc.
3  and Global Distribution Services, Inc. (collectively, Plaintiffs") and
4  Defendants Mobile Motion, Inc. ("Mobile Motion"), Doron Kim and E Dating
5  For Free, Inc. (collectively, "Defendants"), by and through their counsel of
6  record, is made in the above-captioned action with respect to the following
7  recitals:

8    WHEREAS, the parties to this action expect that they will be requested
9  to produce documents, provide testimony and/or otherwise disclose
10  confidential and/or proprietary business and/or financial information and/or
11  other information that requires protection as confidential and/or proprietary
12  trade secret information;

13    WHEREAS, the disclosure of any such confidential information within
14  this action is made solely for purposes of this action and should not be used
15  for any other purpose; and

16    WHEREAS, the parties to this action seek to establish procedures that
17  will protect all confidential information while expediting the discovery
18  process, limiting the occasion for discovery disputes regarding confidentiality
19  and facilitating the disposition by the Court of any disputes that may arise in
20  connection with discovery.

21    NOW, THEREFORE, it is hereby stipulated and agreed, by and
22  between the parties, through their respective counsel, as follows:

23  **A. DEFINITIONS**

24    The following definitions shall apply to this Discovery Order:

25    1.    The "Action" shall mean and refer to the above-captioned matter
26  and to all actions now or later consolidated at any time under the above-
27  captioned matter, through final judgment.

28    2.    "Document" shall mean and refer to all things that come within

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

Case 2:11-mc-00038-KJM-EFB Document 4-3 Filed 05/11/11 Page 45 of 70
Case 2:11-cv-01966-CAS-AGR Document 56 Filed 04/15/11 Page 3 of 16 Page ID
#:1372

1   the definition of "document" contained in Federal Rule of Civil Procedure

2   34(a)(1), including without limitation, documents of any kind, however

3   reproduced and however transcribed; electronic recordings of any kind,

4   including computer program files, data files, source code, CD-ROM or

5   electronic mail; photographs or other visual or audio-visual recording of any

6   kind, including still or motion pictures, microfilm, microfiche, videotapes or

7   laser discs; and sound recording of any kind, including voice mail, cassette,

8   microcassettes, or compact discs. Every original draft, iteration or non-

9   identical copy is a separate Document as that term is used herein.

10      3.   "Confidential Document" shall mean Documents that are

11   confidential and/or proprietary to a party that have not been publicly

12   disclosed and that the Producing Party (as defined below) designates as

13   "Confidential" or "Confidential – Attorneys' Eyes Only" in the manner set

14   forth in this Discovery Order; provided, however, that by agreeing to this

15   Discovery Order, no party waives the right to challenge any other party's

16   designation of any Document as "Confidential" or "Confidential – Attorneys'

17   Eyes Only."

18      4.   "Confidential Information" shall mean confidential and/or

19   proprietary information that has not been made available to the general

20   public that concerns or relates to proprietary, business and financial

21   information, and/or any other information that the Producing Party contends

22   should be protected from disclosure and that may be subject to a protective

23   order under applicable law.

24      5.   "Designating Party" shall mean the party in this Action

25   designating a Document as "Confidential" or "Confidential – Attorneys' Eyes

26   Only."

27      6.   "Producing Party" shall mean the party producing Documents or

28   providing testimony or other written discovery responses in the Action,

CASE NO. CV11-01966 CAS (AGRx)         2         **[PROPOSED] DISCOVERY ORDER**

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

Case 2:11-cv-01966-KJM-EFB Document 4-3 Filed 05/11/11 Page 46 of 70
Case 2:11-cv-01966-CAS-AGR Document 58 Filed 04/15/11 Page 4 of 46 Page ID
#:1373

1  whether informally or pursuant to the Federal Rules of Civil Procedure and
2  any other applicable laws or rules of the Court.

3      7.   "Legend" as used herein shall mean a stamp or similar insignia
4  stating "Confidential" or "Confidential – Attorneys' Eyes Only," or other
5  appropriate term or terms identifying the level of confidentiality of the
6  Document.

7      8.   When reference is made in this Discovery Order to any
8  Document, the singular shall include the plural, and plural shall include the
9  singular.

10     **B. TERMS OF THE DISCOVERY ORDER**

11     1.   <u>Consumer Information.</u> The Parties understand that the Fair
12 Credit Reporting Act, as well as other federal and state laws and court rules,
13 may limit the disclosure of certain customer data in the Parties' possession,
14 and the Parties agree to comply with all such laws and regulations.

15     2.   <u>Designation of Documents</u>

16     a.   Any Producing Party may designate non-publicly disclosed
17 Documents as "Confidential" that the party reasonably and in good faith
18 believes contains or refers to Confidential Information.   Further, any
19 Producing Party may designate non-publicly disclosed Documents as
20 "Confidential – Attorneys' Eyes Only" that the Designating Party reasonably
21 and in good faith asserts contains highly sensitive, competitive, confidential
22 and/or proprietary business and/or financial information the disclosure of
23 which to the adverse party would tend to create a competitive advantage to
24 that party in the market, and that therefore cannot be disclosed to anyone
25 other than those persons set forth in Section B.2.c below without prejudicing
26 the Designating Party.

27     b.   The Producing Party may designate a Document as
28 "Confidential" or "Confidential – Attorneys' Eyes Only" by affixing the

CASE NO. CV11-01966 CAS (AGRx)          3          **[PROPOSED] DISCOVERY ORDER**

1  appropriate Legend to all copies of the Document at the time of production,
2  and/or by including such designation in an appropriate metadata filed with
3  the production of Electronically Stored Information.  The Producing Party
4  must make Document designations at the time of production or within a
5  reasonable time thereafter if such designations are inadvertently omitted.

6      c.    A party may designate deposition testimony as "Confidential" or
7  "Confidential – Attorneys' Eyes Only" by: (i) making such designation on the
8  record during the deposition or hearing (in which case the stenographer
9  shall affix the appropriate Legend to the cover page and all designated
10  pages of the transcript and al copies thereof); or (ii) informing counsel for all
11  other parties of such designation in writing within seven (7) days after
12  receipt of the transcript (in which case any party in possession of an original
13  or copy of the transcript shall affix the appropriate Legend to the cover page
14  and all designated pages and exhibits).

15      d.    A party may designate documents produced by a third party
16  pursuant to a subpoena issued in the Action as "Confidential" or
17  "Confidential – Atorneys' Eyes Only" by informing counsel for all other
18  parties of such designation in writing within seven (7) days after the
19  Designating Party's receipt of the third-party documents.  At that time, the
20  Designating party shall affix the appropriate Legend to each designated
21  page and provide copies of the same to all other parties. In furtherance of
22  this provision, the parties hereby mutually agree that, within five (5) days of
23  a party's receipt of documents from a third party pursuant to subpoena, the
24  receiving party will either (i) provide copies of the third-party documents to
25  all other parties, or (ii) notify all other parties of the receipt of the third-party
26  documents and provide a brief description of the type and volume of
27  documents produced. Within three (3) days of receipt of this notice, all other
28  parties will respond to the receiving party as to whether the responding party

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1 desires a copy of the third-party documents to be made at its own expense,
2 and the parties will each make reasonable efforts to ensure that said copy is
3 made and that it is received by the responding party within five (5) days of
4 the party's receipt of notice of the documents unless otherwise extended by
5 written agreement by counsel for the receiving party and counsel for the
6 party receiving such notice. If, through no fault of the responding party, the
7 copy is not received by the responding party within the five-day period
8 contemplated, said delay will not shorten or otherwise adversely affect the
9 responding party's time to review and designate the documents. For
10 purposes of this Paragraph only, the five-day period for giving notice, the
11 five-day period for providing a copy (which includes the three-day period for
12 responding to notice), and the seven-day period for review and designation
13 are collectively referred to as the "Designation Period." During the
14 Designation Period, all parties agree to treat the third-party documents as
15 "Confidential – Attorneys' Eyes Only."

16     3.    <u>Provisions and Limitations of Use</u>

17     a.    All Confidential Documents in this Action shall be used solely for
18 purposes of the prosecution, defense, or settlement of this Action, including
19 without limitation discovery, motions, briefs, and preparation for the trial, and
20 for no other purpose, except as otherwise stated within this Discovery Order.
21 This Discovery Order does not affect the admissibility or the use of
22 Confidential Documents or Confidential Information.

23     b.    Unless the Designating Party agrees otherwise, and subject to
24 the other provisions of this Discovery Order, Documents designated
25 "Confidential" and any summaries, charts or notes made therefrom, and any
26 facts or information contained therein or derived therefrom, shall not be
27 disclosed to any person except: (i) the Court and its officers; (ii) Designated
28 Counsel of record and employees of Designated Counsel of record; (iii) the

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

CASE NO. CV11-01966 CAS (AGRx)       5       **[PROPOSED] DISCOVERY ORDER**

1 parties to this Action (including any current employees, agents, officers or
2 directors of such parties); (iv) independent contractors, experts, consultants
3 or advisors who are employed or retained by, or on behalf of, any of the
4 parties or counsel for the parties to this Action to assist in preparation of the
5 trial; (v) stenographic reporters who are involved in depositions or any Court
6 hearings or proceedings; (vi) copy service vendors; and (vii) any other
7 person as to whom the parties agree in writing that disclosure is appropriate.

8      c.    Unless the Designating Party agrees otherwise, and subject to
9 the other provisions of this Discovery Order, Documents designated
10 "Confidential – Attorneys' Eyes Only" and any summaries, charts or notes
11 made therefrom, and any facts or information contained therein or derived
12 therefrom, shall not be disclosed to any persons except: (i) the Court and its
13 officers; (ii) Designated Counsel of record and employees of Designated
14 Counsel of record; (iii) independent contractors, experts, consultants or
15 advisors who are employed or retained by, or on behalf of, any of the parties
16 or counsel for the parties to this Action to assist in preparation of the trial;
17 (iv) stenographic reporters who are involved in depositions or any Court
18 hearings or proceedings; (v) copy service vendors; and (vi) any other person
19 as to whom the parties agree in writing that disclosure is appropriate.
20 Documents designated "Confidential – Attorneys' Eyes Only" and any
21 summaries, charts or notes made therefrom, and any facts or information
22 contained therein or derived therefrom, shall not be disclosed to in-house
23 counsel.

24      d.    "Designated Counsel" as set forth in Section B.3.b.(ii) and
25 B.3.c.(ii) above are limited to counsel of record in this Action. Other than
26 persons as expressly set forth in this Section B.3.b and B.3.c, no other
27 counsel shall be permitted access to Documents designated "Confidential –
28 Attorney's Eyes Only" in this Action unless otherwise agreed to by all of the

CASE NO. CV11-01966 CAS (AGRx)     6     **[PROPOSED] DISCOVERY ORDER**

Case 2:11-cv-01966-CAS-JMG-RFB Document 4-3 Filed 05/11/11 Page 50 of 70
Case 2:11-cv-01966-CAS-JMG-RFB Document 50 Filed 04/15/11 Page 8 of 16 Page ID
#:1377

1 | parties in writing. "Designated Counsel" does not include in-house counsel.

2 |     e.    Documents designated "Confidential – Attorneys' Eyes Only"

3 | shall not be disclosed to a party, or to any officer, director, employee or

4 | agent of a party, unless otherwise agreed by the Designating Party or

5 | Parties in writing.

6 |     4.    <u>Duty to Inform of Order</u>. Unless the Designating Party agrees

7 | otherwise, Documents designated "Confidential" may be disclosed to

8 | persons referred to in categories, (i), (v), and (vi) of Section B.3.b, and

9 | Documents designated "Confidential -- Attorneys' Eyes Only" may be

10 | disclosed to persons referred to in categories, (i), (iv), and (v) of Section

11 | B.3.c, only after such persons have been provided with, and have reviewed,

12 | a copy of this Discovery Order.

13 |     5.    <u>Persons Required to Sign Order</u>. Unless the Designating Party

14 | agrees otherwise, Documents designated "Confidential" may be disclosed to

15 | persons referred to in categories (ii), (iii), and (vii) of Section B.3.b, and

16 | Documents designated "Confidential -- Attorneys' Eyes Only" may be

17 | disclosed to persons referred to in category (ii), (iii), and (vi) of Section

18 | B.3.c, only after such persons have been provided with a copy of this

19 | Discovery Order and have signed the certification attached hereto as

20 | **Exhibit A**. This certification shall be retained by the counsel to the party

21 | disclosing the Confidential Documents or Confidential Information to such

22 | persons, and shall not be discoverable by any other party unless a dispute

23 | arises concerning an alleged violation of this Discovery Order.

24 |     6.    <u>Copies</u>. Any person who obtains access to material designated

25 | as "Confidential" or "Confidential – Attorneys' Eyes Only" under this

26 | Stipulated Discovery Order shall not make copies, abstracts, extracts,

27 | analyses, summaries, or other materials which contain, reflect or disclose

28 | Confidential Information, except for use in this litigation, and each such

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1  copy, abstract, extract, analysis, summary, or other material which contains,
2  reflects, or discloses Confidential Information is to be treated in accordance
3  with the provisions of this Stipulated Discovery Order.  All copies of material
4  marked "Confidential" or "Confidential – Attorneys' Eyes Only" in accordance
5  with Paragraph B.2 of this Order shall again be marked with the respective
6  designation if the original mark was not reproduced in the duplicating
7  process.   In the event that copies are made in accordance with the
8  foregoing, all such copies shall constitute, and be treated as, "Confidential"
9  or "Confidential – Attorneys' Eyes Only" Documents as provided in this
10 Discovery Order.  Any person making, or causing to be made, copies of any
11 "Confidential" or "Confidential – Attorneys' Eyes Only" Documents, shall
12 make certain that each copy bears the appropriate Legend pursuant to the
13 requirements of this Discovery Order.

14     7.   <u>Agreement to Maintain Confidentiality</u>.   Unless and until
15 otherwise ordered by the Court, or otherwise agreed by the parties, all
16 Documents designated as "Confidential" or "Confidential – Attorneys' Eyes
17 Only" shall be treated as such under this Discovery Order.

18     8.   <u>Objections to Designation</u>.  Within seven (7) days of the receipt
19 of Documents marked "Confidential" or "Confidential – Attorneys' Eyes Only,"
20 any party to the Action may object to the designation of such Document and
21 seek a modification of such designation by serving a written objection on the
22 Designating Party.  Thereafter, the objecting party shall first make a good-
23 faith effort to resolve such dispute with counsel for the Designating Party.  If
24 the objecting party and the Designating Party are unable to resolve the
25 objection, the objecting party shall move the Court for an order with respect to
26 the disputed information.   The objecting party's obligation to seek de-
27 designation of Documents does not affect the Designating Party's burden to
28 show that the Document is correctly designated as "Confidential" or

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

"Confidential-Attorneys' Eyes Only." In the event that any party files a motion to release a Document from a designation as "Confidential" or "Confidential Attorneys' Eyes Only," the motion must be *accompanied by an application for filing* ~~filed~~ under seal to the extent it discloses designated information, in accordance with the procedure set forth in Central District of California Local Rules 79-5.

9. <u>Separate Discovery Order or Modification of This Discovery Order</u>. This Discovery Order shall be without prejudice to the right of the parties to the Action to present a motion to the Court for a separate Discovery Order as to any particular Document or information, including restrictions differing from those specified in this Discovery Order. In addition, this Discovery Order shall not be deemed to prejudice the parties in any way in any future application for modification of this Discovery Order.

10. <u>Additional Disclosure</u>. If counsel wish to disclose "Confidential" or "Confidential – Attorneys' Eyes Only" material to any person not identified in paragraph B.3.b. or B.3.c. above, including without limitation, a party that produced the "Confidential" or "Confidential – Attorneys' Eyes Only" material, or any third party who was the author or recipient of material produced in this litigation that is designated "Confidential" or "Confidential – Attorneys' Eyes Only," they must proceed in the following manner: the names of the persons to whom "Confidential" or "Confidential – Attorneys' Eyes Only" material is to be disclosed shall be provided in writing to lead counsel for the Designating Party, along with the basis for their need to know, and a description with reasonable specificity of the confidential material to be disclosed. Counsel for the Designating Party shall have seven (7) court days to object to such disclosure in writing. If an objection to the disclosure is asserted by counsel to the Designating Party, the party wishing to disclose the confidentially-designated materials must apply for relief to the Court. Such material shall not be disclosed pending a decision

by the Court on such motion.  Prior to the disclosure of confidential material
to any such person, the person must agree to be bound by the terms of this
Stipulated Discovery Order by signing the certification in the form of Exhibit
A hereto.    By such execution, the person represents that he or she
understands the terms of this Stipulated Discovery Order and that he or she
agrees to be bound by its terms.   The person will be shown only such
identified "Confidential" or "Confidential – Attorneys' Eyes Only" material as
is essential to enable him or her to render the assistance required.

11.  <u>Filing Confidential Material</u>.  No "Confidential" or Confidential –
Attorneys' Eyes Only" material shall be filed in the public record of this
action <ins>except by Court order</ins>.  All material so designated in accordance with the terms of this
Stipulated Discovery Order that is filed with the Court, and any pleadings,
motions or other papers containing confidential material, shall be filed in
accordance with the procedures set forth in Central District of California
Local Rule 79-5.1.

12.  <u>Inadvertent Production or Disclosure of Confidential Documents
or Information</u>.   The inadvertent production or disclosure of Confidential
Documents or Information by a Producing Party shall not constitute a waiver
of any claim of confidentiality where (a) the Producing Party notifies the
receiving party in writing of such inadvertent disclosure within ten (10)
business days of becoming aware of such disclosure, and (b) within thirty
(30) days of such notice, the Producing Party provides properly
redesignated Documents to the receiving party.  During the thirty (30) day
period after notice, the materials shall be treated as designated in the
Producing Party's notice.    Upon receipt of properly redesignated
Documents, the receiving party shall return all unmarked or incorrectly
designated Documents to the Producing Party within five (5) business days.
All parties, however, reserve all rights to challenge the confidential status of

CASE NO. CV11-01966 CAS (AGRx)        10        [PROPOSED] DISCOVERY ORDER

1 such inadvertent production or disclosure.

2     13.   <u>Inadvertent Disclosure of Confidential Documents or Information</u>
3 <u>to Third Parties</u>.  Upon learning that Confidential Documents or Information
4 have been inadvertently disclosed by a receiving party to any person or
5 party not authorized to receive them by this Discovery Order, then the
6 receiving party shall:  (a) immediately notify the Designating Party; (b) use
7 its best efforts to obtain the return of any such Confidential Documents or
8 Information and to bind such person or party to the terms of this Agreement;
9 (c) within seven (7) business days of the discovery of such disclosure,
10 inform such person or party of all provisions of this Agreement and identify
11 such person or party to the Designating Party; and (d) request such person
12 or party to sign the certification attached hereto as Exhibit A. The executed
13 certification shall be served upon counsel for the Designating Party within
14 ten (10) business days of its execution by the party to whom the Confidential
15 Documents or Information was inadvertently disclosed.   Nothing in this
16 Paragraph is intended to limit the remedies that the Designating Party may
17 pursue for breach of this Discovery Order.

18     14.   <u>Subpoena of Confidential Document or Confidential Information</u>.
19 If at any time any Confidential Document or Confidential Information is
20 subpoenaed by a third party to a party that is named in this action, or
21 otherwise requested by any other person or entity purporting to have
22 authority to require the production of any such Document or information, the
23 party that is named in this action to whom the subpoena or other request is
24 directed shall give written notice within three (3) business days thereof to the
25 Designating Party and shall make no disclosure unless seven (7) court days
26 have elapsed from the date on which written notice was given without
27 objection by the Designating Party or unless the Designating Party has
28 consented in writing.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

CASE NO. CV11-01966 CAS (AGRx)         11         [PROPOSED] DISCOVERY ORDER

15.   Continuation of Protection After Disposition.  The termination of proceedings in the Action shall not relieve any of the parties from the obligation of maintaining the confidentiality of all Confidential Documents and Confidential Information produced and designated pursuant to this Discovery Order, unless all of the parties to the Action agree otherwise.  ~~The Court shall retain jurisdiction to resolve any dispute concerning the use of information disclosed hereunder.~~  Upon the final disposition of the Action, the parties shall ~~automatically~~ promptly return any Confidential Documents (and all copies made thereof) to the Producing Party from whom such Documents were obtained or shall certify the destruction thereof; provided, however, that the parties shall be entitled to keep in their possession any court filings, deposition transcripts or hearing transcripts, all of which shall continue to be governed by this Discovery Order.

16.   ~~Designated Materials in Possession of Court After Final Disposition.  After the final disposition of the Action, including all periods for appeal, upon an ex parte motion for an order authorizing the destruction of materials designated under this Order, the Court may destroy such materials designated under this Order.~~

17.   Inadvertent Production of Privileged or Protected Documents.  If information subject to a claim of attorney-client privilege or work product protection is inadvertently produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of privilege or work-product protection for such information.  If a party has inadvertently produced information subject to a claim of privilege or protection, upon written request made by the Producing Party within ten (10) business days of discovery of such inadvertent production, the information for which a claim of inadvertent production is made, including all copies, shall be returned within seven (7) business days of such request unless the

CASE NO. CV11-01966 CAS (AGRx)                      12              [PROPOSED] DISCOVERY ORDER

1  receiving party intends to challenge the Producing Party's assertion of
2  privilege or protection. All copies of inadvertently produced Documents shall
3  be destroyed, and any Document or material information reflecting the
4  contents of the inadvertently produced information shall be expunged. If a
5  receiving party objects to the return of such information within the seven (7)
6  business day period described above, the Producing Party may move the
7  Court for an order compelling the return of such information. Pending the
8  ruling, a receiving party may retain the inadvertently produced Documents in
9  a sealed envelope and shall not make any use of such information.

10  18. <u>Modification of the Discovery Order.</u> The Court may modify the
11  terms and conditions of the Discovery Order for good cause, or in the
12  interest of justice, or on its own order at any time during these proceedings.
13  The parties prefer that the Court provide them with notice of the Court's
14  intent to modify the Order and the content of those modifications prior to
15  entry of such an order.

16  19. <u>Relation to any Court or Local rules.</u> Without separate court
17  order, the Discovery Order and the parties' stipulation does not change,
18  amend, or circumvent any court rule or local rule.

19
20  20. <u>Filing documents under Seal.</u> No document shall be filed under
21  seal pursuant to this Discovery Order unless counsel secures a court order
22  allowing the filing of a document under seal. An application to file a document
23  under seal shall be served on opposing counsel, and on the person or entity
24  that has custody and control of the document, if different from opposing
25  counsel. If opposing counsel, or the person or entity who has custody and
26  control of the document, wishes to oppose the application, he/she must
27  contact the chambers of the judge who will rule on the application, to notify
28  the judge's staff that an opposition to the application will be filed.

CASE NO. CV11-01966 CAS (AGRx)                    13              **[PROPOSED] DISCOVERY ORDER**

21.   This Stipulation and Order Concerning Discovery and Confidentiality (the "Order") shall only apply to documents specifically marked with a Legend stating the document is "Confidential" and "Confidential – Attorney's Eyes Only" pursuant to the foregoing procedures. Any documents produced by any party that does not specifically contain a mark, stamp or similar insignia stating "Confidential" or "Confidential – Attorneys' Eyes Only" shall not be subject to this Order.

22.   This Discovery Order may be executed in counterparts with the same force and effect as if executed in one complete document, and facsimile or scanned .pdf copies of original signatures shall have the same force and effect as originals.

23.   The Parties agree to be bound by the terms of this Stipulation pending entry of the Discovery Order by the Court.

**IT IS SO ORDERED.**

DATED: April 15, 2011

CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

## EXHIBIT A

## NON-DISCLOSURE CERTIFICATION

I, _____, hereby declare under penalty of perjury that I have read in its entirety and understand the [Proposed] Order Concerning Discovery and Confidentiality ("Discovery Order") that was issued by the United States District Court for the Central District of California in the case entitled, *Global Dev. Strategies, Inc. et al. v. Mobile Motion, Inc. et al.*, United Stated District Court for the Central District of California, Case No. CV 11-01966 CAS (AGRx). I agree to comply with and to be bound by all the terms of this Discovery Order and I understand and acknowledge that failure to so comply may expose me to sanctions and punishment in the nature of contempt. I agree that I will not disclose in any manner any information or item that is subject to this Discovery Order to any person or entity except in compliance with the Discovery Order.

I further agree to submit to the jurisdiction of the United States District Court for the Central District of California for the purpose of enforcing the terms of this Discovery Order, even if such enforcement proceedings occur after termination of this action.

Dated: _____      By_____
                                            (Signature)


                                   _____
                                            (Print Name)

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

**EXHIBIT C**

1  **KRONENBERGER BURGOYNE, LLP**
2  Karl S. Kronenberger (SBN 226112)
   Jeffrey M. Rosenfeld (SBN 222187)
3  Virginia A. Sanderson (SBN 240241)
4  150 Post Street, Suite 520
   San Francisco, CA 94108
5  Telephone:  (415) 955-1155
6  Facsimile:  (415) 955-1158
   karl@KBInternetLaw.com
7  jeff@KBInternetLaw.com
   ginny@KBInternetLaw.com
8
9  Attorneys for Defendants Mobile Motion, Inc.,
   Doron Kim, and E Dating For Free, Inc.
10

11
             **UNITED STATES DISTRICT COURT**
12            **CENTRAL DISTRICT OF CALIFORNIA**
13

14

15 **GLOBAL DEVELOPMENT**            Case No. CV11-01966 CAS
   **STRATEGIES, INC.**, *et al.*,    (AGRx)
16
         Plaintiffs,                  **DEFENDANTS' MEMORANDUM**
17                                    **OF POINTS AND AUTHORITIES**
   vs.                               **IN SUPPORT OF MOTION TO**
18                                    **DISMISS**
19 **MOBILE MOTION, INC.**, *et al.*,
                                     Hearing Date: April 18, 2011
20       Defendants.                 Time:  10:00 a.m.
                                     Place:  Courtroom 5, 2nd Floor
21
22                                   Before Hon. Christina A. Snyder
23

24

25

26

27

28

CASE NO. CV11-01966 CAS (AGRx)              **DEFENDANTS' MPA ISO MOTION TO**
                                            **DISMISS**

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................. 1

II. STATEMENT OF FACTS ..................................................... 2

   A. The Parties ................................................................. 2

   B. The Oral Agreement ..................................................... 4

   C. The Public Availability of Domain Registrar Information .................... 5

   D. Plaintiffs' Notice and Acknowledgment of Defendants' Ownership
     of the Domains ........................................................... 5

     1) Plaintiffs' 2008 Attempt to Purchase Some of the Domains from
       Mobile Motion ......................................................... 6

     2) Plaintiffs' Acknowledgement That Mobile Motion Owned the
       Domains ............................................................... 8

III. CERTIFICATION OF MEET AND CONFER EFFORTS ...................... 10

IV. LEGAL ARGUMENT ......................................................... 10

   A. Standard of Review on a Motion to Dismiss .............................. 10

     1) The Court must accept all allegations in the Complaint as true
       except for conclusory allegations contradicted by documentary
       evidence within the Complaint ......................................... 10

     2) The Court may convert Plaintiffs' motion to dismiss into a motion
       for summary judgment if the Court finds it necessary to consider
       extraneous material in its ruling ....................................... 11

   B. Each of Plaintiffs' claims is barred by the applicable statute of
     limitations .............................................................. 12

     1) The alleged breaches and fraud occurred over seven years ago,
       in 2003 ................................................................ 13

     2) Plaintiffs' alleged ignorance of Mobile Motion's ownership of the
       Domains does not qualify for equitable tolling under the
       Discovery Rule ........................................................ 13

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

3) Plaintiffs had actual knowledge of Mobile Motion's ownership
of the Domains as early as 2008..................................................15

C. Plaintiffs have not stated a single valid claim for relief. .................16

1) Plaintiffs have not stated a valid claim for cybersquatting under
the Anti-Cybersquatting Consumer Protection Act .....................16

2) Plaintiffs have not stated a valid claim for breach of contract......20

3) Plaintiffs have not stated a valid claim for breach of an implied
covenant of good faith and fair dealing.......................................21

4) Plaintiffs have not stated a valid claim for conversion................21

5) Plaintiffs have not stated a valid claim for fraud, and any such
claim is barred by the doctrine of election of remedies...............22

V. CONCLUSION ..........................................................................24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

# TABLE OF AUTHORITIES

*Agosta v. Astor*, 120 Cal. App. 4th 596 (2004) ................................................. 22

*Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937,
173 L.Ed.2d 868 (2009) .................................................................... 10

*B & J Enterprises, Ltd. v. Giordano*, 329 F. App'x. 411 (4th Cir. 2009) ...... 18

*Baker v. Superior Court*, 150 Cal. App. 3d 140 (1983) ............................ 23

*Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 203 F. App'x. 252
(11th Cir. 2006) ................................................................................ 18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................... 10

*Bentley v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*,
No. 09-16111, 2011 WL 288963 (9th Cir. Jan. 31, 2011) ..................... 11

*Burlesci v. Petersen*, 68 Cal. App. 4th 1062 (1998) ................................ 21

*Cal. Lettuce Growers v. Union Sugar Co.*, 45 Cal.2d 474 (1955) ............... 20

*CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226 (2008) ................ 20

*Chang v. Chen*, 80 F.3d 1293 (9th Cir. 1996) ...................................... 11

*Chappell v. Goltsman*, 91 U.S.P.Q. 30 (D. Ala. 1951) ............................ 19

*DaimlerChrysler v. The Net Inc.*, 388 F.3d 201 (6th Cir. 2004) ................ 17

*Dollar Tree Stores Inc. v. Toyama Partners, LLC*, No. C 10-325 SI,
2010 WL 4973761 (N.D. Cal. Dec. 1, 2010). ..................................... 11

*DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213 (9th Cir. 2010) ..................... 17

*Fin. Exp. LLC v. Nowcom Corp.*, 564 F. Supp. 2d 1160 (C.D. Cal. 2008) . 17

*Foster & Kleiser Co. v. Special Site Sign Co.*, 85 F.2d 742 (9th Cir. 1936) 14

*Golf Warehouse, L.L.C. v. Golfer's Warehouse, Inc.*,
142 F. Supp. 2d 1307 (D. Kan. 2001) ................................................ 18

*Gordon v. Virtumundo, Inc.*, 575 F.3d 1040 (9th Cir. 2009) ..................... 3

*Hart Scaffner & Marx v. Empire Mnfg. Co.*, 94 U.S.P.Q. 171 (1952) ......... 19

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

CASE NO. CV11-01966 CAS (AGRx)

iii

DEFENDANTS' MPA ISO MOTION TO
DISMISS

*Hayward Union High Sch. Dist. of Alameda County v. Madrid*,
   234 Cal. App. 2d 100 (1965) ................................................... 15

*In re BankAmerica Corp.*, 231 U.S.P.Q. 873 (1986)..........................19

*In re Cambridge Digital Systems*, 1 U.S.P.Q.2d 1659 (1986) ...................19

*In re Charles S. Loeb Pipes*, 190 U.S.P.Q. 238 (1976).........................19

*In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008) ...................11

*Internet Specialties W., Inc. v. Milon-DiGiorgio Enterprises*, Inc.,
   559 F.3d 985 (9th Cir. 2009) ................................................... 13

*Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060 (C.D. Cal. 2009) ...................11

*Mangini v. Aerojet-General Corp.*, 230 Cal. App. 3d 1125 (1991) ............14

*Maddux v. Philadelphia Life Ins. Co.*, 77 F. Supp. 2d 1123
   (S.D. Cal. 1999) ................................................................... 23

*Migliori v. Boeing N. Am., Inc.*, 114 F. Supp. 2d 976 (C.D. Cal. 2000) ......14

*Miles, Inc. v. Scripps Clinic & Research Found.*, 951 F.2d 361
   (9th Cir. 1991) ..................................................................... 14

*Old Oakland P'ship I v. Lukens*, 188 F.3d 514 (9th Cir. 1999)..................11

*Philbrick v. eNom, Inc.*, 593 F. Supp. 2d 352 (D.N.H. 2009) ....................18

*Pebble Beach v. Tour 18I, Ltd.*, 942 F. Supp. 1513 (S.D. Tex. 1996)........19

*Pulver v. Avco Financial Services*, 182 Cal.App.3d 622 (1986)................23

*Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*,
   11 Cal. App. 4th 1026 (1992) ................................................. 21

*Reynolds Metals Co. v. Alperson*, 84 Cal. App. 3d 68 (1978)..................24

*Ricks v. BMEzine.com, LLC*, 727 F. Supp. 2d 936 (D. Nev. 2010) ......17-19

*Roam v. Koop*, 41 Cal. App. 3d 1035, 1040 (1974)..............................24

*Saul Zaentz Co. v. Wozniak Travel, Inc.*, 627 F. Supp. 2d 1096
   (N.D. Cal. 2008) ................................................................... 13

*Sons v. McManis*, No. F08-0840 AWI TAG, 2010 WL 3491514
   (E.D. Cal. Sept. 3, 2010) ....................................................... 14

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

*Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293 (9th Cir.1998) ................ 11

*Swedberg v. Marotzke*, 339 F.3d 1139 (9th Cir. 2003)............................ 12

*Television Adventure Films Corp. v. KCOP Television, Inc.*,
   249 Cal. App. 2d 268 (1967) ................................................ 12

*Ticketmaster Corp. v. Tickets.Com, Inc.*, CV 99-7654 HLH(BQRX),
   2000 WL 525390 (C.D. Cal. Mar. 27, 2000) ......................... 12

*Trujillo v. Huerta*, B190330, 2007 WL 1776031
   (Cal. Ct. App. June 21, 2007)................................................ 20

*Usher v. City of Los Angeles*, 828 F.2d 556 (9th Cir.1987) ..................... 10

*Verizon California Inc. v. Navigation Catalyst Sys., Inc.*,
   568 F. Supp. 2d 1088 (C.D. Cal. 2008) ................................ 16

*Volk v. D.A. Davidson & Co.*, 816 F.2d 1406 (9th Cir. 1987) ................... 14

*World Impressions, Inc. v. McDonald's Corp.*, 235 F. Supp. 2d 831
   (N.D. Ill. 2002)...................................................................... 18

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

# Federal Statutes, Rules, and Other Authorities

2  Cal. Code Civ. Proc. § 338(c)–(d) ........................................................ 13

3  Cal. Code Civ. Proc. § 339(1) ............................................................ 12

4  Cal. Code Civ. Proc. § 1598 ............................................................. 20

5  Fed. R. Civ. P. 8(a)(2)..................................................................... 20

6  Fed. R. Civ. P. 9(b)........................................................................ 22

7  15 U.S.C. §1125(d)......................................................................... 16

8  Anti-Cybersquatting Consumer Protection Act (ACPA)...................... *passim*

9  *Definitions, Implementation, and Reporting Requirements Under the*
   *CAN-SPAM Act*, 70 Fed.Reg. 25,426, 25,446 n.233 ........................... 3

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

CASE NO. CV11-01966 CAS (AGRx)

vi

**DEFENDANTS' MPA ISO MOTION TO
DISMISS**

Defendants Mobile Motion, Inc., Doron Kim, and E Dating for Free, Inc. (collectively, "Defendants") respectfully submit the following memorandum of points and authorities in support of their motion to dismiss the Complaint.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The parties to this case have a lengthy history in business and litigation. Plaintiffs Global Development Services, Inc. and Global Distribution Services, Inc. (collectively, "Plaintiffs") are just two of many garage door service companies owned and operated by Peter Stephens. Defendant Mobile Motion ("Mobile Motion") provides lead generation to various garage door service companies, including Plaintiffs and other companies owned by Peter Stephens.

It is undisputed that the parties' business relationship began in 2003 and is governed by an oral agreement ("the Agreement") made at that time. It is also undisputed that, since 2003, Mobile Motion has been the owner and registrar of the many Internet domains ("the Domains") at issue here, which have been used at various times to generate leads for Plaintiffs and their predecessors as well as other clients of Mobile Motion. Plaintiffs disagree, and contend that, under the Agreement, they were entitled to own the Domains. Plaintiffs allege that they were "ignorant" of the fact that Mobile Motion has owned the Domains for over seven years and that they were surprised to discover this fact in late 2010 when other litigation prompted them to look up the owner. However, in the Complaint, Plaintiffs imply that they were able to ascertain Mobile Motion's ownership of the Domains by performing a simple "WHOIS" search on the Internet.

Accordingly, it is clear from the face of the Complaint that each of Plaintiffs' claims is barred by the applicable statute of limitations. Plaintiffs

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1    admit, through their allegations that the alleged breach of the Agreement,
2    fraudulent misrepresentations, and other wrongful conduct occurred in 2003.
3    Plaintiffs do not sufficiently plead tolling of these statutes by California's
4    "Discovery Rule" because they provide no explanation for why they failed to
5    ascertain that Mobile Motion was the owner of the Domains even though
6    such information is, and always has been, publically available. Should the
7    Court decide to convert this motion into a motion for summary judgment, the
8    Court will learn that Plaintiffs had actual knowledge of Mobile Motion's
9    ownership of the domains in 2008 and likely before that.

10       It is also clear from the face of the Complaint that Plaintiffs have failed
11   to state any valid claim for relief.  Each of Plaintiffs' claims fail due to
12   pleading deficiencies and it is unlikely Plaintiffs will be able to resolve these
13   problems through amendment.  Thus, for the reasons discussed below,
14   Defendants respectfully ask the Court to dismiss Plaintiffs' Complaint in its
15   entirety with prejudice.

16              **II.    STATEMENT OF FACTS**

17       Defendants acknowledge that, on a motion to dismiss, the Court must
18   limit its consideration to the Complaint alone. Defendants are confident that
19   the Complaint is facially deficient. However, to the extent that any of the
20   below-stated facts reference or are otherwise supported by extraneous
21   evidence submitted herewith by Defendants, they are provided for the
22   Court's consideration only in the event the Court deems it fit to convert this
23   motion into a motion for summary judgment on the issue of whether
24   Plaintiffs' claims are time-barred.

25   **A. The Parties**

26       Plaintiffs describe themselves as "sellers and installers of overhead
27   garage doors." (Compl. ¶ 18.) Plaintiffs admit that "Peter Stephens is the
28   sole shareholder of both GLOBAL entities GLOBAL STRATEGIES and

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

GLOBAL SERVICES." (Compl. ¶ 19.) Plaintiffs also allege that, prior to forming the Plaintiff entities, Peter Stephens was the "sole shareholder and President" of Plaintiffs' predecessors. (*Id.* ¶ 20.) Indeed, Plaintiffs and their predecessors are all closely-held corporations owned and operated by Peter Stephens. Mobile Motion believes Peter Stephens has hired the following members of his family to assist in running these businesses:

- Marlene Stephens, Peter Stephens' mother;
- Ron Stephens, Peter Stephens' brother; and
- Misti Stephens, Ron's wife and Peter Stephens' sister-in-law.

(Declaration of Doron Kim in Support of Defendants' Motion to Dismiss Complaint ["Kim Decl."] ¶ 10.)

Defendant Mobile Motion, Inc. ("Mobile Motion") provides lead generation to various garage door service companies. (*Id.* ¶ 3.) Mobile Motion generates these customer leads by registering domain names and creating websites regarding garage door services. (*Id.* ¶ 5.) All of the domain names and websites used by Mobile Motion for lead generation are owned exclusively by Mobile Motion. (*Id.* ¶ 7.) The fact that Mobile Motion is the registered owner of its websites is (and, at all relevant times, has been) public information available on databases such as WHOIS,[1] which are as easy to search as Google. (*Id.* ¶ 8.)

Defendant E Dating For Free, Inc. ("E Dating") operates an online Christian dating service, located at <christiandatingforfree.com>. (*Id.* ¶ 26.)

---

[1] "WHOIS is a publically available online database through which users can access information regarding domains, including the registrant's name, address, phone number, and e-mail address. *See Definitions, Implementation, and Reporting Requirements Under the CAN-SPAM Act*, 70 Fed.Reg. 25,426, 25,446 n.233 (proposed May 12, 2005) (to be codified at 16 C.F.R pt. 316). WHOIS data is compiled by registrars from information submitted by registrants." *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1069 (9th Cir. 2009).

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1  E Dating is not related to Mobile Motion and does not have any agreements
2  or ownership interest in Mobile Motion. (*Id.* ¶ 27.) Defendant Doron Kim
3  ("Kim") is the president of both Mobile Motion and E Dating. (*Id.* ¶ 2.)

4  **B. The Oral Agreement**

5      In or about 2003, Mobile Motion entered into an oral agreement ("the
6  Agreement") with Peter Stephens to generate customer leads for various
7  garage door service companies owned and operated by Peter Stephens.
8  (Kim Decl. ¶ 9.)  The terms of the Agreement were simple. Mobile Motion
9  agreed to generate customer leads for Peter Stephens' companies by (1)
10  creating websites targeting specific geographic locations that advertised
11  "local" garage door services with a telephone number that redirected to one
12  of Peter Stephens' companies, and (2) launching and managing an Internet
13  marketing campaign to drive traffic to these websites. (*Id.*)  In exchange,
14  Peter Stephens—on behalf of his various companies—agreed (1) to pay
15  Mobile Motion a five percent (5%) commission on the gross profits resulting
16  from Mobile Motion's leads, and (2) to reimburse any expenses incurred by
17  Mobile Motion related to its performance under the Agreement. (*Id.*)  In order
18  to simplify the invoicing and billing process regarding reimbursement, Peter
19  Stephens provided Mobile Motion with credit cards to be used to pay directly
20  for expenses related to the Agreement. (*Id.* ¶ 11.)  Mobile Motion believes
21  that Peter Stephens did so to ensure that Mobile Motion did not markup any
22  costs. (*Id.*)

23      Under the Agreement—as under all of its agreements with garage
24  door service companies, including Plaintiffs—Mobile Motion was entitled to
25  register, renew, or lease domain names that Mobile Motion expected would
26  generate favorable leads for Peter Stephens' companies (collectively, the
27  "Domains"). (*Id.* ¶ 12.) Under the Agreement—as under all its agreements—
28  Mobile Motion retained all ownership and leasehold rights to the Domains as

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

4

DEFENDANTS' MPA ISO MOTION TO DISMISS